Filed 7/8/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re J.S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>J.S.,<br><br>      Defendant and Appellant. | A135214<br><br>(Contra Costa County<br>Super. Ct. No. J0900388) |

J.S. appeals from the court's order that he be temporarily housed at the Department of Juvenile Facilities (DJF), pursuant to Welfare and Institutions Code[1] section 1752.16. He challenges the application of section 1752.16 on a number of grounds, including sufficiency of the evidence supporting its use in his case. We conclude that because section 1752.16 requires a contract between the county and DJF and because the record is devoid of evidence of such a contract, the court had no basis for concluding that section 1752.16 could be utilized in J.S.'s case. We reverse the court's order that J.S. be housed at DJF and remand for further proceedings.

The court's order also imposed a number of probation conditions on J.S. J.S. contends that the court was not authorized to impose conditions of probation when ordering him to be housed at DJF. We disagree, because J.S. was not committed to the custody of the DJF.

---

[1] Unless otherwise specified, subsequent code references are to the Welfare and Institutions Code.

1

J.S. also challenges certain probation conditions, or subsets of conditions considered together, as unconstitutionally vague or overbroad, or as unreasonable infringement of his constitutional rights. Several of his challenges have merit and we strike or modify the conditions at issue.

## BACKGROUND

### I. *Factual and Procedural Background*

The facts of J.S.'s case are not at issue on appeal and we state them only as necessary to explain the procedural history.

J.S. came to the attention of police when, at 12 years of age, neighbors observed him in sexual activity with an eight-year-old boy. On March 12, 2009, a petition under section 602 was filed, alleging that J.S. committed two counts of lewd and lascivious acts with a child, violations of Penal Code section 288, subdivision (a). J.S. admitted one count and was adjudged a ward of the court. He was placed at Gateway Residential Programs, from which he was expelled for failing to comply with the program's rules. The court sustained a probation violation and placed J.S. at Martin's Achievement Place, from which he was expelled for noncompliant and disruptive behavior. The court sustained a probation violation and J.S. was returned to Martin's Place, on condition that he take medication prescribed by a juvenile hall psychiatrist. The placement was terminated after J.S. placed his hands on the hips of an adult female staff member from behind and started pushing his erect penis against her through his clothing. After a contested probation revocation hearing, the court sustained a probation violation.

Following a contested disposition hearing on March 28, 2011, the court continued J.S. as a ward of the court and committed him to the custody of DJF for a maximum term of eight years. J.S. appealed and, on May 22, 2012, this court reversed the commitment to DJF, as required by the holding of *In re C.H* (2011) 53 Cal.4th 94, 97-98 (*C.H.*). (*In re J.S.* (May 22, 2012, A131645) [2012 WL 1854300, nonpub. opn.].) However, on April 9, 2010, the juvenile court had already set aside the DJF commitment. At a contested

2

hearing on that date, the court adopted the recommendations[2] made in a probation department report, dated April 5, 2012, and ordered that J.S. be "temporarily housed" at DJF, pursuant to section 1752.16, to be returned to Contra Costa County "when he satisfactorily completes DJF's Sex Offender Behavioral Treatment" or in 2016 (J.S's 21st birthday, at which time the court's jurisdiction over him as a ward would end).

J.S. timely filed a notice of appeal.

## II. *Legal Background*

In *C.H.*, the California Supreme Court held that "a juvenile court lacks authority to commit a ward to the DJF under section 731(a)(4) if that ward has never been adjudged to have committed an offense described in section 707(b), even if his or her most recent offense alleged in a petition and admitted or found true by the juvenile court is a sex offense set forth in [Penal Code] section 290.008(c) as referenced in section 733(c)." (*C.H.*, *supra*, 53 Cal.4th at pp. 97-98.)

The minor in *C.H.* had admitted a violation of Penal Code section 288, subdivision (a), and had made little progress in over three years on probation, admitting to four separate violations of probation for failing to comply with program placement rules. (*C.H.*, *supra*, 53 Cal.4th at p. 98.) The juvenile court "observed that C.H.'s commitment offense . . . was not an offense falling within the provisions of section 707(b), but concluded that after three years of failed attempts to help C.H. in three different reputable programs, commitment of C.H. to the DJF was necessary so that he would not have access to other potential victims and could receive the benefit of the DJF's adolescent sexual offender program." (*Id.* at p. 99, fn. omitted.) A unanimous court reversed the commitment of C.H. to the DJF, observing that "[a] ward's commission of an offense described in section 707(b) is . . . a prerequisite for a juvenile court's authority to order DJF commitment." (*Id.* at pp. 102, 109.)

---

[2] The probation department made 25 numbered recommendations that the court adopted without change and incorporated into its order. We will refer to these adopted recommendations as "paragraphs" of the court's order, referencing them by the numbers used in the list of recommendations.

*C.H.* was published on December 12, 2011. In response to *C.H.*, the Legislature passed, as urgency legislation to take effect immediately, Assembly Bill No. 324 (2011-2012 Reg. Sess.) (AB 324). AB 324 was signed by the governor, and became effective, on February 29, 2012. (See <http://www.leginfo.ca.gov/pub/11-12/bill/asm/ab_0301-0350/ab_324_bill_20120229_chaptered.pdf>.) The bill amended section 707 to authorize a DJF commitment when the ward "has committed an offense described in subdivision (b) of Section 707 or subdivision (c) of Section 290.008 of the Penal Code, and is not otherwise ineligible for commitment to the division under Section 733." (AB 324 § 1; § 707, subd. (a)(4).) Thus, a ward similarly situated to C.H., but whose violation of Penal Code section 288, subdivision (a), occurs after February 29, 2012, may be committed to the DJF.

AB 324 also added section 1752.16: "(a) The chief of the Division of Juvenile Facilities, with approval of the Director of Finance, may enter into contracts with any county of this state for the Division of Juvenile Facilities to furnish housing to a ward who was in the custody of the Division of Juvenile Facilities on December 12, 2011, and whose commitment was recalled based on both of the following: [¶] (1) The ward was committed to the Division of Juvenile Facilities for the commission of an offense described in subdivision (c) of Section 290.008 of the Penal Code. [¶] (2) The ward has not been adjudged a ward of the court pursuant to Section 602 for commission of an offense described in subdivision (b) of Section 707. [¶] (b) It is the intent of the Legislature in enacting this act to address the California Supreme Court's ruling in [*C.H*]."[3] (AB 324 § 3.)

## DISCUSSION

### I. *Section 1752.16*

J.S. challenges the order that he be housed at DJF, pursuant to section 1752.16, on three non-constitutional grounds: (1) section 1752.16 contravenes the holding of *C.H.*;

---

[3] Later legislation added section 1752.16, subdivision (c): "Notwithstanding Sections 11010 and 11270 of the Government Code, any county entering into a contract pursuant to this section shall not be required to reimburse the state."

4

(2) section 1752.16 does not actually authorize the order of the court; and (3) insufficient evidence supported application of section 1752.16 in his case. We find no merit in the first two challenges, but agree with J.S. on the third.

## A. *Section 1752.16 is Not in Tension with* **C.H.**

J.S. first contends that "housing" at DJF is simply commitment to DJF under another name, and thus allows what *C.H.* expressly forbids: "A linguistic sleight-of-hand, creating a verbal distinction without an actual difference, cannot justify a juvenile court in ignoring a controlling opinion of the Supreme Court of California." This contention ignores important differences between commitment to DJF, pursuant to section 731, subdivision (a)(4), and a juvenile court order "housing" a ward at DJF, pursuant to section 1752.16.

A juvenile court's jurisdiction over a ward cannot extend past the ward's 21st birthday, except in limited circumstances. (§ 607.) Commitment to the DJF, however, can result in detention well beyond a youth's 21st birthday. (§ 1769.) Because section 1752.16 does not change an affected youth's status as a ward under the direct supervision of the court, it does not authorize housing beyond a youth's 21st birthday.

Youths who have committed specified sex offences, including Penal Code section 288, subdivision (a), and who have been committed to the DJF, are required to register as sex offenders upon release from the DJF. (Pen. Code, § 290, subd. (d).) Because section 1752.16 does not commit a youth to the custody of the DJF, but only houses the youth at a DJF facility, application of section 1752.16 does not trigger a requirement for registration as a sex offender.

We conclude that the legal status of a youth who is "housed" at DJF is very different from the legal status of a youth who has been committed to the DJF. The housing permitted by section 1752.16 is not commitment by another name. The conclusion of *C.H.* was that the law then current did not authorize the commitment of youths such as C.H. and J.S. to the DJF. *C.H.* does not address the questions posed by section 1752.16, a statute that specifically authorizes the housing of such youths at DJF facilities.

5

We conclude that section 1752.16 and *C.H.* are not in tension. The Fifth District recently reached the same conclusion: "a housing order [pursuant to section 1752.16] is not merely a semantically different authorization of the same punishment declared impermissible in . . . *C.H.*" (*In re Robert M.* (2013) 215 Cal.App.4th 1178, 1183 (*Robert M.*).)

**B. *Section 1752.16 Creates a Dispositional Alternative***

J.S. next argues that we must reverse the court's order housing him at DJF because section 1752.16 "does not actually authorize any placement of delinquent minors. Rather, it only authorizes the Chief of the [DJF] (with the approval of the Director of Finance) to contract with counties to furnish housing for certain wards. The statutorily authorized placements for delinquent wards remain those set forth in . . . section 202."

In *Robert M.*, the minor, like J.S., was a person described in section 1752.16. (*Robert M.*, *supra*, 215 Cal.App.4th at p. 1182.) The juvenile court committed Robert M. " 'to Juvenile Hall . . . until he reaches the age of 21 with housing at [DJF]' pursuant to section 1752.16. The juvenile court also stated: '[Minor] is to complete sex offender counseling at [DJF] . . . . And upon completion of that sex offender counseling, he is to be returned to the . . . Juvenile Court for possible modification of his sentence.' " (*Ibid.*)

In *Robert M.*, the minor also contended that "the juvenile court lacks statutory authority to authorize housing at DJF because no such dispositional alternative is available under sections 202 and 727." (*Robert M.*, *supra*, 215 Cal.App.4th at p. 1184.) Section 727, subdivision (a)(1), provides: "If a minor is adjudged a ward of the court . . . the court may make any reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the minor, including medical treatment . . . ." Section 731, subdivision (a)(3), permits the court to order a ward to "participate in a program of professional counseling as arranged and directed by the probation officer as a condition of continued custody of the ward." The *Robert M.* court concluded that an order that a ward be housed at DJF pursuant to section 1752.16 for the purpose of treatment "is fully authorized by sections 202, 727, and 731." (*Robert M.*, at p. 1184). We agree.

**C.** *Insufficient Evidence Supported Application of Section 1752.16 in This Case*

J.S. contends that the court's order that he be housed at DJF must be reversed because insufficient evidence supported the applicability of section 1752.16. He argues that section 1752.16 may not be applied absent a contract between the county and DJF and the record is devoid of evidence, or even mention, of such a contract. The People do not dispute that there was no evidence of a contract.

The People first propose that J.S. has not preserved this issue on appeal because he did not raise the issue below. They cite *People v. Pollock* (2004) 32 Cal.4th 1153, 1181, for the proposition that "a timely objection is statutorily required to preserve a claim of error regarding evidence." This misstates the law. The actual quote at the cited location is: "A timely objection is statutorily required to preserve a claim of error in the admission of evidence." The issue here is sufficiency of the evidence and not whether evidence was wrongly admitted or denied admission. A challenge to the sufficiency of the evidence "requires no predicate objection in the trial court." (*People v. Viray* (2005) 134 Cal.App.4th 1186, 1217.)

By its own terms, section 1752.16 requires a contract between the DJF and the county. The People claim that the "court did not err in relying on section 1752.16 without evidence of a contract because such contracts are standard language in this part of the Juvenile Court law." Even if we agreed that such contracts are "standard language," we fail to see how that excuses lack of evidence of a contract. The People go on to remind us of "the rule articulated in Evidence Code section 664 " ' "that a trial court is presumed to have been aware of and followed the applicable law." ' " (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549.) They also remind us: " '[I]t is settled that: "A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' " (*People v. Alvarez* (1996) 49 Cal.App.4th 679, 694.) They conclude that "the juvenile court did not need to see evidence of an actual contract before relying on probation's recommendation to order appellant housed at DJF under section 1752.16."

The existence of a contract is a question of fact, not an "intendment" or a "presumption." By the unfathomable calculus of the People's reasoning, reliance on a probation report's recommendation becomes a substitute for evidence of the facts required for a determination that a particular law applies to the facts of a particular case. A probation department's recommendations constitute a proposed outcome for the court. They are not, in themselves, facts upon which a court may rely in determining whether that outcome is reasonable, permitted by law, or factually justified.

Without evidence that the contract required by section 1752.16 existed, the court had no basis for a determination that the disposition allowed by section 1752.16 could be employed in J.S.'s case. Accordingly, we reverse paragraph 3 of the court's order, providing that J.S. be "temporarily housed at DJF, pursuant to [section] 1752.16." We also reverse paragraphs 4, 5 and 7 of the court's order,[4] because they are dependent on confinement at DJF. The matter of a proper disposition for J.S. is remanded.

In *Robert M.*, the minor challenged the juvenile court's disposition on another ground: "The written order in this case might be construed as ordering DJF to house minor during his commitment to juvenile hall. However, the juvenile court did not order joinder of DJF as a party pursuant to section 727, former subdivision (a) (the statute was amended effective Jan. 1, 2013), and, as a result, had 'no authority to order services' from the agency." (*Robert M.*, *supra*, 215 Cal.App.4th at p. 1184, fn. 5.) The court rejected this challenge: "It is clear from the transcript of oral proceedings that the court, in essence, merely authorized the probation officer to seek housing at DJF for the purpose of minor's participation in the sexual offender program during the time minor was otherwise in juvenile hall; the court did not purport to order DJF to accept minor into the program." (*Ibid.*) This resolution suggests that if the court's order, or the proceedings at the disposition hearing, make clear that an order for housing at DJF, pursuant to 1752.16,

---

[4] Paragraph 4 specifies that J.S. is to be returned to Contra Costa County "when he satisfactorily completes DJF's Sex Offender Behavioral Treatment." Paragraph 5 specifies that confinement would end on December 31, 2016, because the court would lose jurisdiction over J.S. on that date. Paragraph 7 authorizes DJF to "dispense psychotropic medications to [J.S.] if necessary."

is conditioned on the probation department's success in making the proper arrangements, then the fact of a contract need not be established at the disposition hearing.

## II. *Probation Conditions*

Paragraphs 8 through 25 of the court's order are conditions of probation. J.S. contends that the court was not authorized to impose conditions of probation when ordering him to be housed at DJF. J.S. also challenges certain probation conditions, or subsets of conditions considered together, as unconstitutionally vague or overbroad, or as unreasonable infringement of his constitutional rights.

## A. *Legal Standard*

Section 730, subdivision (b), authorizes the juvenile court to "impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced."

"The permissible scope of discretion in formulating terms of juvenile probation is even greater than that allowed for adults . . . . '[E]ven where there is an invasion of protected freedoms "the power of the state to control the conduct of children reaches beyond the scope of its authority over adults." ' [Citation.] This is because juveniles are deemed to be 'more in need of guidance and supervision than adults, and because a minor's constitutional rights are more circumscribed.' [Citation.] Thus ' " 'a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court.' " ' " (*In re Victor L.* (2010) 182 Cal.App.4th 902, 910 (*Victor L.*), disagreed with on another ground by *People v. Patel* (2011) 196 Cal.App.4th 956, 960.)

"[T]he juvenile court's discretion is not boundless. Under the void for vagueness doctrine, based on the due process concept of fair warning, an order ' "must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated." ' [Citation.] The doctrine invalidates a condition of probation ' " 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " ' [Citation.] By failing to clearly define the prohibited conduct, a vague condition of probation allows law

9

enforcement and the courts to apply the restriction on an ' " '*ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' " ' " (*Victor L.*, *supra*, 182 Cal.App.4th at p. 910.)

In addition, the overbreadth doctrine requires that conditions of probation that impinge on constitutional rights must be tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation. (*Victor L.*, *supra*, 182 Cal.App.4th at p. 910.)

Keeping all of these principles in mind, "[w]e review conditions of probation for abuse of discretion." (*People v. Olguin* (2008) 45 Cal.4th 375, 379.) "As with any exercise of discretion, the sentencing court violates this standard when its determination is arbitrary or capricious or ' " ' exceeds the bounds of reason, all of the circumstances being considered.' " [Citations.]' [Citation.]" (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.)

## B. *The Imposition of Probation Conditions*

J.S. first contends that "a juvenile court may not simultaneously place a minor at DJF and impose probation conditions." He relies on *In re Allen N.* (2000) 84 Cal.App.4th 513, 516 (*Allen N.*): "[T]he juvenile court's imposition of discretionary conditions of probation constitutes an attempt to regulate or supervise the minor's rehabilitation, a function solely in the hands of [DJF] after the minor's commitment. . . . Simply put, the imposition of probationary conditions constitutes an impermissible attempt by the juvenile court to be a secondary body governing the minor's rehabilitation."

*Allen N.* does not help J.S., because the juvenile court did not commit him to the custody of the DJF and the holding of the court in *Allen N.* depended on the fact that commitment to the DJF " 'removes the ward from the *direct supervision* of the juvenile court.' " (*Allen N.*, *supra*, 84 Cal.App.4th at p. 515.) As we have already noted, the housing of a ward at DJF, pursuant to section 1752.16, is substantially different from commitment to the DJF, and there is no reason to believe that the court's order removed

J.S. from the court's direct supervision.[5]  (See *In re Ronny P.* (2004) 117 Cal.App.4th 1204, 1208 [juvenile court does not lose direct supervision by a camp placement order].)

    We conclude that the court was authorized to impose conditions of probation at the disposition hearing because the court was not committing J.S. to the custody of the DJF.

**C.** ***The Conditions Concerning Internet Usage***

**1.** ***Background***

    Paragraphs 18 through 22 of the court's order imposed conditions related to Internet usage, computers, and electronic devices:  "18.  Shall not possess at any time any type of pornography, including written pornography, pictures, videotapes, or electronic computer applications or telecommunications access to such applications.  [¶]  19.  Shall make available to Probation, all user IDs and passwords for computers, email, cameras, smartphones, cell phones, gaming consoles/devices and any other electronic devices.  [¶] 20.  Shall facilitate the Probation Officer's access to any of the above electronic devices in order to allow the Probation Officer to utilize digital forensics tools needed for supervision.  [¶]  21.  Shall make available to the Probation Officer any User ID's, access codes and passwords for social networking sites, email, web mail, online storage, chat rooms and blogs, and these passwords, User IDs, access codes and passwords shall not be encrypted.  [¶]  22.  Shall have no access to an open wireless network.  All wireless networks must be closed and locked down, with the password provided to the Probation Officer.  The defendant cannot possess or use any encrypted data, files, encrypted whole disk, and encrypted volumes."

    At the April 9, 2012 hearing, defense trial counsel objected to these conditions, stating:  "[A]ll of these conditions are not reasonably related to [J.S.'s] offenses, which had nothing to do with using the Internet or being in possession of pornography through computers . . . ."  The probation officer responded:  "[I]f we are to access a young man's

_____

    [5]  The court's order also scheduled a review hearing to take place on September 24, 2012.  This indicates that the court understood that it retained direct supervision of J.S.

11

computer system, it would be to assure that he is not committing new offenses or that he does not compromise his ability to be rehabilitated. [¶] These conditions are necessary and they only enhance the ability to provide supervision and ultimately result in the minor's rehabilitation."

Following discussion, the court stated its conclusion that the probation conditions, including "[f]or example, lack of access to the Internet, forbidding possession of pornography, including written pornography," were appropriate.

J.S. challenges these conditions as both vague and overbroad, because of language contained in paragraphs 18 and 22.

## 2. Prohibition of Telecommunications Access to Pornographic Computer Applications

Paragraph 18 not only prohibits J.S. from possessing pornography, including pornography in the form of computer applications, but also prohibits possession of "telecommunications access to such applications." J.S. claims that this part of the condition is vague and has no clear meaning. He suggests that it could be construed as prohibiting use of the Internet, even though paragraphs 19 through 22 contemplate use of the Internet. Such an interpretation would be supported by the court's mention of "lack of access to the Internet" as an appropriate condition. If the condition means that J.S. is prohibited from accessing the Internet, then, he contends, it would be overbroad.

The People concede that the conditions are not meant to prohibit J.S. from using the Internet, but their briefing is singularly unhelpful on the question of vagueness. They simply state the conclusion they would have us reach, without attempting to demonstrate how the challenged wording has a clear meaning: "[The Internet usage conditions] are not vague. To the contrary, they clearly state their purpose and are specifically tailored to appellant's sex offenses and rehabilitation. Any purported uncertainty is preempted by the requirement in each condition to consult with the probation officer . . . to achieve compliance." The People seem to be arguing here that it doesn't matter if a probation violation is vague, so long as it contains a requirement to consult with a probation officer

12

about its meaning.[6]  This is not the law, which, as we have noted above, requires that a condition of probation be precise enough to convey to the probationer what is required of him or her, and to allow a court to determine whether the probationer is in violation of a condition.  (See *United States v. Guagliardo* (9th Cir. 2002) 278 F.3d 869, 872 (*Guagliardo*) [rejecting argument that vagueness is cured by probation officer's authority to interpret a restriction].)

We agree with J.S. that a prohibition of the possession of "telecommunications access" to pornography in the form of computer applications is unconstitutionally vague.  It might be read to prohibit the possession of smartphones, tablets, and computers, because they all incorporate interfaces to telecommunications channels that could be used to access pornographic computer applications.  It might be read to prohibit the possession of software, such as an Internet browser, that utilizes telecommunications channels to provide access to networked applications, including pornographic applications.  Because the People concede that the probation conditions were not meant to prohibit J.S. from accessing the Internet, we have no idea what it is, related to telecommunications access, that J.S. is prohibited from possessing.

Perhaps what was meant here was a prohibition of *using* (rather than *possessing*) a capability of telecommunications access to access remote pornographic computer applications that are not themselves in J.S.'s possession.  If so, that is not a meaning conveyed by the words used in the condition.  Accordingly, because the wording employed is unconstitutionally vague, we strike the words "or telecommunications access to such applications" from paragraph 18.  On remand, the court may consider additional or modified probation conditions that more precisely convey the intended meaning.

### 3.  *Prohibition on Use of an "Open" Wireless Network*

Paragraph 22 prohibits J.S. from accessing "an open wireless network" and commands that any wireless network he does access "be closed and locked down, with

---

[6] Even if the People were correct on this point of law, they are in error concerning the facts.  Contrary to their assertion, none of paragraphs 18 through 22 contains a requirement to consult with the probation officer to achieve compliance.

13

the password provided to the Probation Officer." J.S. contends that this provision is also unconstitutionally vague, questioning whether "closed and locked down" implies the use of content controls on the network, or merely means that network security be enabled, requiring a wireless device to provide a password before being connected. Again, the People simply maintain that the provision is not vague, but do not explain what it means. They do, however, claim that the Internet conditions "simply aim to monitor Internet use to prevent recidivism," which is also what the probation officer explained at the hearing.

The condition in question here is concerned with ensuring that any wireless network that J.S. uses has certain characteristics—characteristics that a "closed and locked down" network has, but which an "open" network may not have. The requirement that the password be supplied to the probation officer implies that a "closed and locked down" network has a password. However, by using the conjunctive term "closed *and* locked down," we must assume that the condition contemplates more than one difference between the "closed and locked down" networks that J.S. is permitted to use, and "open" networks that he is not permitted to use. We do not, however, discern any additional differences that proceed naturally from use of the words "open" and "closed and locked down."

The purpose of the condition is to enhance the probation department's ability to monitor J.S.'s Internet usage and this also implies differences between permitted and prohibited networks beyond the mere requirement for a password. This is because the requirement for a password would be of no use to the probation department unless the wireless network creates and keeps records about devices that, or users who, successfully provide a password, and the times during which they are connected. We are not aware of, nor do the People propose, any usage of "closed and locked down" that implies such record keeping.

The record does not indicate, nor do the People argue, that "open" and "closed and locked down" are technical terms that have specific meaning. Because the probation condition fails to convey what distinguishes a "closed and locked down" network from an "open" network, we conclude that the condition is unconstitutionally vague.

14

Accordingly, we strike the first two sentences from paragraph 22. In order to preserve what is not vague in these two sentences, we substitute in their place: "Probationer shall provide all passwords used to access wireless networks to his probation officer."

**D.  *The Prohibition on the Possession of Pornography***

Paragraph 18 of the court's order states that J.S. "[s]hall not possess at any time any type of pornography, including written pornography, pictures, videotapes, or electronic computer applications or telecommunications access to such applications." J.S. maintains that this condition is unconstitutionally vague and overbroad because what may constitute pornography is a subjective evaluation and lacks a legal test.

In *Guagliardo*, the defendant had been convicted of possessing child pornography and one of the conditions of his supervised release was that he not possess " 'any pornography,' including legal adult pornography." (*Guagliardo*, *supra*, 278 F.3d at p. 872.) The *Guagliardo* court found this condition to be unconstitutionally vague, commenting: "As the Third Circuit recognized in *United States v. Lov*, 237 F.3d 251, 263 (3d Cir. 2001), a probationer cannot reasonably understand what is encompassed by a blanket prohibition on 'pornography.' The term itself is entirely subjective; unlike 'obscenity,' for example, it lacks any recognized legal definition. The district court here could not itself define the term, stating only that 'The Court won't have any trouble defining it if [Guagliardo] violates it.' This after-the-fact definition, however, leaves Guagliardo in the untenable position of 'discover[ing] the meaning of his supervised release condition only under continual threat of reimprisonment, in sequential hearings before the court.' *Lov*, 237 F.3d at 258." (*Guagliardo*, at p. 872.)

Although J.S. discusses *Guagliardo* prominently, the People fail to address the case. We agree with the analysis of the *Guagliardo* court, which concluded: "Reasonable minds can differ greatly about what is encompassed by 'pornography.' Given this inherent vagueness, Guagliardo cannot determine how broadly his condition will extend. Further, we cannot determine whether the condition is otherwise reasonable . . . ." (*Guagliardo*, *supra*, 278 F.3d at p. 872.)

15

Above, we struck the latter portion of paragraph 18, dealing with telecommunications access, for vagueness. What is left, however, is vague for the reasons stated here, so we strike paragraph 18 from the court's order in its entirety. On remand, the court may consider whether a condition with greater specificity would be reasonable.

## E. *Sharing of Treatment Information*

Paragraphs 15 through 17 of the court's order provide: "15. Shall consent to a full sex offender evaluation/assessment as provided by an approved Sex Offender Treatment Provider as directed by Probation Officer. [¶] 16. Shall consent and cooperate with sex offender assessment instructions when deemed necessary by treatment provider(s) and/or the Probation Officer. [¶] 17. Shall consent to the sharing of privileged assessment and treatment information between public and private agencies, agents and persons who are deemed essential in assessing, monitoring, or mediating treatment for sexual deviancy problems." J.S. contends that these conditions are "constitutionally infirm because they violate the privacy of the psychotherapy process, and compel [J.S.] to incriminate himself in violation of his rights under the Fifth Amendment to the United States Constitution."

During oral argument, the People conceded that paragraph 17 should be stricken, basing this concession on *People v. Gonzales* (2013) 56 Cal.4th 353, 385 (assuming, "*without deciding*, that in at least some circumstances the federal Constitution protects an individual from governmentally compelled disclosure of confidential communications between the individual and his or her psychotherapist or the use of information obtained by such compelled disclosure in a court proceeding"). Because of the People's concession, we strike paragraph 17, a resolution that addresses the issues raised by J.S.[7]

## F. *Contact with Minors*

Paragraph 14 of the court's order specifies that J.S. "[s]hall not have any contact with any minors under the age of 18, without adult supervision, approved and/or

---

[7] In striking paragraph 17, we do not make a determination that *Gonzales* actually requires us to consider it an unreasonable violation of J.S.'s constitutional rights.

16

authorized by Probation Officer." J.S. contends that this condition is unreasonable and, infringing on his First Amendment right of association, is not narrowly drawn to achieve a purpose of promoting public safety.

Paragraph 14 is unconstitutionally vague because it does not specify the scope of the "supervision" to be performed by the adult who is approved or authorized by the probation officer. There are many degrees of supervision and neither we, nor J.S., can tell whether the court intended the adult supervisor to be constantly in the physical presence of J.S. and a minor with whom he is in contact, or simply within earshot. In a treatment facility, a camp, juvenile hall, or DJF, there is constant "supervision" by adults, even when wards are not within the physical presence or earshot of an adult. The deficiency in paragraph 14 is readily apparent when compared with the similar, but much more explicit, condition found in *People v. Moses* (2011) 199 Cal.App.4th 374, 377: " 'Do not associate with minors or frequent places where minors congregate, including but not limited to: schoolyards, parks, amusement parks, concerts, playgrounds, swimming pools, and arcades, unless in the company of a responsible adult over the age of 21 who is approved by the probation officer or court, knows of your offense(s), and is willing to monitor your behavior.' "

Paragraph 14 is also vague, because it is unclear what it is that must be "approved and/or authorized by Probation Officer." We read the condition as requiring that the probation officer approve or authorize the adult who is performing the supervision. However, both J.S. and the People read paragraph 14 as allowing unsupervised contact if approved or authorized by the probation officer.[8] That we read the condition so differently than both parties is ample indication that reasonable minds can differ about the meaning of paragraph 14.

---

[8] J.S. describes the condition as meaning that he may "not associate with persons under age 18 without prior permission of his probation officer." The People describe the condition as informing J.S. "that he is to avoid being alone with minors while housed at DJF unless under the supervision of an adult or without the prior approval of probation."

Accordingly, we strike paragraph 14 from the court's order. The court and parties, in further proceedings, may consider whether a "contact with minors" condition, more carefully formulated than paragraph 14, would be unreasonably overbroad.

**III.** *Constitutional Challenges to Section 1752.16*

In addition to the nonconstitutional challenges to section 1752.16 that we have discussed, J.S. also contends that: (1) on the facts of his case, detention at DJF constitutes cruel and unusual punishment under both the federal and state constitutions; (2) section 1752.16 violates the equal protection clause of the Fourteenth Amendment to the United States Constitution; and (3) section 1752.16 violates the ex post facto clauses of the federal and state Constitutions.

" 'A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.' " (*Santa Clara County Local Transport Authority v. Guardino* (1995) 11 Cal.4th 220, 230-231, quoting *Lying v. Northwest Indian Cemetery Prot. Assn.* (1988) 485 U.S. 439, 445.) Accordingly, we do not reach the constitutional issues that J.S. raises because we have already reversed the application of section 1752.16 in his case on a narrower ground.

However, at a subsequent disposition hearing, it may be that the People again seek application of section 1752.16, this time providing evidence of a contract between the county and the DJF. In that case, J.S. may raise, and the court should address, the constitutional issues. We discuss J.S.'s ex post facto claim here in order to help the parties frame that issue in a more focused manner, without deciding the merits.[9]

---

[9] Although we do not discuss J.S.'s equal protection argument, we must note that *Robert M.* rejected the minor's argument that because " 'similarly situated wards could be treated differently based simply on their county of commitment, i.e., as to whether or not the county had entered into a contract with the [DJF,]' " section 1752.16 violates equal protection guarantees. (*Robert M.*, *supra*, 215 Cal.App.4th at pp. 1184-1185.) J.S.'s argument is distinct from the minor's argument in *Robert M.*, so *Robert M.*'s conclusion that section 1752.16 did not violate equal protection guarantees would not be controlling for the juvenile court.

## A. *Ex Post Facto Laws*

Both the United States Constitution and the California Constitution prohibit ex post facto laws. (*People v. Delgado* (2006) 140 Cal.App.4th 1157, 1163 (*Delgado*).) "We interpret the state ex post facto clause no differently than its federal counterpart." (*Id.* at p. 1164, fn. omitted.) "[E]x post facto principles are applicable to juvenile proceedings." (*In re Melvin J.* (2000) 81 Cal.App.4th 742, 760, overruled on other grounds in *John L. v. Superior Court* (2004) 33 Cal.4th 158, 181, fn. 7 [also applying ex post facto analysis in a juvenile case].)

" '[A]ny statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with [a] crime of any defense available according to law at the time when the act committed, is prohibited as ex post facto.' " (*Delgado*, *supra*, 140 Cal.App.4th at p. 1164 [quoting *Beazell v. Ohio* (1925) 269 U.S. 167, 169-170].) "Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." (*Collins v. Youngblood* (1990) 497 U.S. 37, 43.)

"The standard for determining whether a law violates the ex post facto clause has two components, 'a law must be retrospective—that is, "it must apply to events occurring before its enactment" —and it "must disadvantage the offender affected by it" . . . by altering the definition of criminal conduct or increasing the punishment for the crime . . . .' " (*Delgado*, *supra*, 140 Cal.App.4th at p. 1164.) When a law is challenged as a facial violation of the ex post facto clause (which is J.S.'s argument), the question for the "disadvantage" prong is whether the law "produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." (*California Dept. of Corrections v. Morales* (1995) 514 U.S. 499, 509, fn. omitted; see also *In re Vicks* (2013) 56 Cal.4th 274, 294.) The risk must be "significant" (*Garner v. Jones* (2000) 529 U.S. 244, 251) and not "speculative and attenuated" (*Morales*, at p. 509).

**B.  *Increase in Punishment***

Because section 1752.16 is facially retroactive, the question that might come before the court is whether its provision that a county may contract with the DJF to "house" a ward at a DJF facility presents a sufficient risk of an increase in punishment over any punishment that could have been lawfully imposed, absent the provisions of section 1752.16, on a minor to whom section 1752.16 applies.  The holding of *C.H.* is that such a minor could not lawfully have been committed to the custody of the DJF.

The People argue that J.S. cannot establish that section 1752.16 increases the measure of punishment:  "To the contrary, as a result of section 1752.16, appellant's 'measure of punishment' is significantly lessened.  Appellant's new status as a probationer merely housed at, and not committed to, DJF means that he will not have to register as a sex offender upon release from DJF, he will not be subject to DJF parole, and he will not be under the jurisdiction of the juvenile court until age 25.  Moreover, appellant's statutory maximum term of confinement is unchanged by the new placement order."

This argument misses the point entirely.  It compares the most recent disposition order of the court, taken pursuant to section 1752.16, with the prior disposition order committing J.S. to the custody of the DJF—a disposition that was, under *C.H.*, unauthorized.  It is true that the order of the court housing J.S. at the DJF carries a lower measure of punishment than a commitment to the DJF, but that is irrelevant because a commitment to DJF was never an authorized punishment for J.S. or other minors described by section 1752.16.  What must be compared are the "housing" of a minor at DJF and dispositions that would have been authorized for such minors in the absence of section 1752.16.

We first note that two other provisions in the Welfare and Institutions Code provide for the placement of a juvenile ward at a DJF facility without a commitment to the DJF.  Neither of these two provisions are generally applicable to the minors affected by section 1752, so they will not affect an analysis of whether section 1752 creates a sufficient risk of increasing the measure of punishment for such youths.

20

First, section 1752.1 provides, in relevant part: "The director may enter into contracts with the approval of the Director of Finance with any county of this state, upon request of the board of supervisors thereof, wherein the Youth Authority agrees to furnish diagnosis and treatment services and temporary detention during a period of study to the county for selected cases of persons eligible for commitment to the Youth Authority." This section is not applicable to the minors affected by section 1752.16 because, under *C.H.*, they are not "eligible for commitment to the Youth Authority."

Second, section 1752.15 provides, in relevant part: "The director may enter into contracts, with the approval of the Director of Finance, with any county of this state upon request of the board of supervisors thereof, wherein the Department of the Youth Authority agrees to furnish temporary emergency detention facilities and necessary services incident thereto, for persons under the age of 18 years who are in the custody of the county probation officer pursuant to provisions of Chapter 2 (commencing with Section 200) of Part 1 of Division 2. Facilities of the department may be used only on a temporary basis when existing county juvenile facilities are rendered unsafe or inadequate because of a natural or manmade disaster, or when the continued presence of the minor or minors in the county juvenile facilities would, in the opinion of the judge of the juvenile court having jurisdiction over the minor, of the chief probation officer of the county, and of the director, present a significant risk of violence or escape." This section is not generally applicable to the minors affected by section 1752.16, who may be over the age of 18, from counties not experiencing the exigent circumstance of disaster, and/or not subject to a finding by the court that they present "a significant risk of violence or escape."

Besides these generally inapplicable provisions, the most restrictive disposition available to a court for a juvenile ward who is, like J.S., under the age of 19, and who is ineligible for commitment to the DJF, is detention at a local juvenile hall. (§ 202, subd.

21

(e)(5).)[10] Thus, the question becomes whether detention at DJF presents an increase in the measure of punishment over detention at juvenile hall for youths under age 19.

The California Supreme Court has regularly noted that a DJF commitment is more restrictive than any other disposition available to the juvenile court. (See *In re Greg F.* (2012) 55 Cal.4th 393, 404 ["[p]lacement options include the home of a relative or extended family member; a suitable licensed community care facility or foster home; juvenile hall; a ranch, camp or forestry camp; and, the most restrictive setting, DJF"]; *In re W.B.* (2012) 55 Cal.4th 30, 44 ["[DJF] . . . is the most restrictive placement"]; *In re Eddie M.* (2003) 31 Cal.4th 480, 488 ["[t]he most restrictive placement is the [DJF]"].)

Although part of the restrictiveness of a DJF commitment comes from the potential of remaining in detention past the age of 21, subsequent DJF parole, and, for sex

---

[10] The minor in *Michael M.* was over the age of 19 and one reason the court rejected that minor's ex post facto argument was that: "for wards of minor's age, section 208.5, both before and after the enactment of section 1752.16, permitted a ward who is committed to juvenile hall to be housed in the county jail. [Citation.] It cannot realistically be argued that housing at DJF for the limited purpose of successful completion of the sexual offender program is a greater punishment than a fixed term of commitment to juvenile hall, with housing at the county jail, where the ward has no ability to effectuate his release through completion of a counseling program." (*Robert M.*, *supra*, 215 Cal.App.4th at p. 1186.) Because the *Robert M.* court limited its discussion to a comparison between a commitment to juvenile hall, with housing in the county jail, to housing at DJF for the purpose of completing a treatment program for sexual offenders, that court was apparently conducting an "as applied" ex post facto analysis, and not a "facial" analysis. We do not read *Robert M.* as addressing the question whether section 1752.16 facially violates the ex post facto clause for youths over the age of 19. Nevertheless, we limit our discussion here to youths under that age.

*Robert M.* also rejected the minor's ex post facto argument because "[t]he mere fact that the state created an additional resource to provide sexual offender treatment, and this resource was in a different location than the existing local programs, does not constitute an increase in the punishment authorized for purposes of the ex post facto clauses." (*Robert M.*, *supra*, 215 Cal.App.4th at p. 1186.) We would not be so quick to dismiss the possibility that the conditions attendant on a newly authorized treatment program might be so significantly different as to constitute an increase in punishment. The actual terms of the housing contract between the county and DJF could be relevant to that question in an "as applied" analysis. In any case, the *Robert M.* court's "as applied" analysis does not resolve the question whether section 1752.16 facially violates the ex post facto clause.

offenders, a registration requirement, it is also the DJF setting itself that contributes to its position as the most restrictive placement. "Commitment to the [DJF] . . . has penal overtones, including institutional confinement with adult offenders. . . ." (*In re Arthur N.* (1976) 16 Cal.3d 226, 237, fn. omitted, superseded on another ground by statute as stated in *In re Eddie M.*, *supra*, 31 Cal.4th at p. 485.) That the Legislature may now consider those who are situated like C.H. to be among the most serious juvenile offenders does not change the fact that there is a significant difference in the population between DJF facilities and local juvenile halls. The Legislature has enacted a number of statutes relating to the segregation of juvenile offenders from adult offenders, underlining the significance of this population difference. (See §§ 207.1, 208, 208.5.)

We do not decide here whether such considerations alone are sufficient to resolve the ex post facto question. If the court finds itself with this issue before it, and determines that it cannot reach a resolution based on the population difference alone, then it should hold an evidentiary hearing to explore the differences between detention at a juvenile hall and detention at a DJF facility. Keeping in mind that nothing in section 1752.16 suggests that a juvenile ward who is "housed" at DJF will have day-to-day conditions of detention that differ in any way from those who are committed to the custody of DJF, the question before it will be whether detention at a DJF facility poses a significant risk of increasing the measure of punishment as compared to detention at a juvenile hall.

## DISPOSITION

The court's order that J.S. be housed at DJF, pursuant to section 1752.16, (paragraph 3) is reversed, along with provisions of the court's order that are dependent on that disposition (paragraphs 4, 5 and 7).

The probation condition dealing with contact with minors (paragraph 14) is reversed.

The probation condition dealing with the sharing of assessment and treatment information (paragraph 17) is reversed.

23

The probation condition dealing with possession of pornography (paragraph 18) is reversed.

The probation condition dealing with network access (paragraph 22) is modified to read: "Probationer shall provide all passwords used to access wireless networks to his probation officer. Probationer cannot possess or use any encrypted data, files, encrypted whole disk, and encrypted volumes."

The court's order is affirmed in all other respects.

The matter of a disposition for J.S. is remanded for further proceedings in accordance with this opinion.

_____
Lambden, J.

We concur:

_____
Haerle, Acting P.J.

_____
Richman, J.

24

Trial Court:                          Contra Costa County Superior Court

Trial Judge:                          Hon. Joni Hiramoto

Attorneys for Defendant and           Under Appointment by the Court of Appeal
Appellant:                            Violet Elizabeth Grayson


Attorneys for Plaintiff and           Kamala D. Harris
Respondent:                           Attorney General of California

                                      Dane R. Gillette
                                      Chief Assistant Attorney General

                                      Gerald A. Engler
                                      Senior Assistant Attorney General

                                      Eric D. Share
                                      Supervising Deputy Attorney General

                                      Christina Vom Saal
                                      Deputy Attorney General