[No. A109991. First Dist., Div. Four. June 27, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
MARGARITO MARTINEZ DELGADO, Defendant and Appellant.

1158

## COUNSEL

James F. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan, and Catherine A. Rivlin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RUVOLO, P. J.**—The only issue on appeal is whether the constitutional ban on ex post facto laws prohibits the imposition of probation conditions pursuant to Penal Code[1] section 1203.097, governing cases involving domestic violence, where the underlying offenses were committed before the statute was enacted. We hold that application of section 1203.097 in this case violates ex post facto principles. We vacate the sentence and remand for resentencing.

### I.

### BACKGROUND

On January 4, 1993, defendant Margarito Martinez Delgado was charged with three offenses committed on January 3, 1993: count one, attempted unlawful sexual intercourse (§§ 664, 261, subd. (a)(2)); count two, sexual battery (§ 243.4, subd. (a)); and count three, felony false imprisonment (§ 236).[2] Defendant entered a plea of not guilty at his arraignment on January 5, 1993. Defendant then failed to appear at his next hearing. A bench warrant was issued, but defendant remained at large for the next 12 years.

---

[1] Unless otherwise noted all statutory references are to the Penal Code.

[2] The facts underlying defendant's offenses are not relevant to the instant appeal.

On March 10, 2005, defendant was again arraigned and again entered a plea of not guilty to all three counts. A first amended complaint was filed on March 16, 2005, which realleged the previous three counts, and added an additional offense committed on January 3, 1993: count four, infliction of corporal injury upon a spouse or cohabitant (§ 273.5, subd. (a)). A new complaint was also filed that same day, alleging defendant violated section 1320, subdivision (b), by failing to appear in court.

Defendant pleaded guilty to counts three (felony false imprisonment) and four (corporal injury to spouse or cohabitant) of the amended complaint. He also pleaded guilty to the single count in the new complaint for violating section 1320, subdivision (b). Counts one and two were dismissed with a *Harvey*[3] waiver.

■ On April 13, 2005, imposition of sentence was suspended on counts three and four, and defendant was placed on probation pursuant to section 1203.097.[4] The conditions of probation included, inter alia, (1) 36 months of supervised probation; (2) 40 hours of community service work; and (3) a domestic violence payment of $400. Defense counsel argued that defendant could not be sentenced under section 1203.097 because the underlying offenses occurred before the effective date of that statute. Section 1203.097 was enacted on September 21, 1994. (Stats. 1993–1994, 1st Ex. Sess., ch. 28, § 4, p. 8615.) Defendant committed the offenses in question on January 3, 1993. At the time, a person convicted of violating former section 273.5 was subject to punishment by "imprisonment in the state prison for 2, 3 or 4 years, or in a county jail for not more than one year, or by a fine of up to six thousand dollars ($6,000) or by both." (Former § 273.5, subd. (a).) In the event probation was granted, participation in a batterer's treatment program was required, unless the court found that participation in such a program was inappropriate for the defendant. (Former § 273.5, subd. (e).) Additionally, the suspension of the sentence could not exceed the maximum possible term of the sentence. (Former § 1203.1.)

Current law provides that if probation is granted to any person convicted of violating section 273.5, subdivision (a), "the court shall impose probation consistent with the provisions of Section 1203.097." (§ 273.5, subd. (f).) Section 1203.097 imposes several mandatory conditions of probation for a crime involving domestic violence, including: (1) a minimum period of probation of 36 months (§ 1203.097, subd. (a)(1); (2) a minimum payment of $400 [two-thirds to finance local domestic violence programs and one-third to

---

[3] *People v. Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396].

[4] Defendant was also granted probation in the failure to appear case.

finance statewide domestic violence funds] (§ 1203.097, subd. (a)(5); and (3) a specified amount of community service (§ 1203.097, subd. (a)(8)).[5]

The trial court determined that sentencing under section 1203.097 was permissible because the statute applied to grants of probation without reference to the date of the offense. This timely appeal followed.

## II.

## DISCUSSION

■ Courts generally have considerable discretion in fashioning the terms of probation. (See § 1203 et seq.) "A condition of probation will not be invalid unless it[:] '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.] Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*People v. Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545], fn. omitted.)

However, when a court grants probation in a case involving domestic violence, section 1203.097 requires a trial court to impose numerous mandatory conditions of probation. Defendant contends the imposition of the mandatory probation conditions set forth in section 1203.097 is an ex post facto application of the law. The People, on the other hand, contend there is no ex post facto violation because prior to the enactment of section 1203.097, the trial court had discretion to impose the conditions of probation challenged on appeal.

### A. Ex Post Facto Principles

■ Both the federal and state Constitutions prohibit ex post facto laws. (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9; *Collins v. Youngblood* (1990) 497 U.S. 37, 41 [111 L.Ed.2d 30, 110 S.Ct. 2715] (*Collins*); *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 288 [279 Cal.Rptr. 592, 807 P.2d 434] (*Tapia*).)

---

[5] Section 1203.097, subdivision (a) imposes eight mandatory conditions of probation. However, defendant's challenge is limited to the three conditions set forth above.

We interpret the state ex post facto clause no differently than its federal counterpart.[6] (*People v. Snook* (1997) 16 Cal.4th 1210, 1220 [69 Cal.Rptr.2d 615, 947 P.2d 808].)

■ The traditional understanding of the ex post facto clause was expressed in *Beazell v. Ohio* (1925) 269 U.S. 167, 169–170 [70 L.Ed. 216, 46 S.Ct. 68], as follows: "It is settled . . . that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with [a] crime of any defense available according to law at the time when the act committed, is prohibited as ex post facto." (Italics omitted; see *Tapia, supra,* 53 Cal.3d at pp. 293–294; *People v. McVickers* (1992) 4 Cal.4th 81, 84 [13 Cal.Rptr.2d 850, 840 P.2d 955].) This formulation conforms with the seminal decision in *Calder v. Bull* (1798) 3 U.S. (3 Dall.) 386 [1 L.Ed. 648], and was reaffirmed in *Collins, supra,* 497 U.S. at pages 42–43. The court in *Collins* further refined the scope of the prohibition established by the ex post facto clause as follows: "Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." (*Id.* at p. 43.) "Under *Collins* . . . the ex post facto clause prohibits not a just a *burden* but a more burdensome *punishment.*" (*People v. McVickers, supra,* 4 Cal.4th at p. 84, citation omitted.) Thus, after *Collins,* the relevant inquiry is not whether the law results in a disadvantage to the person affected by it but whether it increases the penalty by which the crime is punished. (*California Dept. of Corrections v. Morales* (1995) 514 U.S. 499, 506–507, fn. 3 [131 L.Ed.2d 588, 115 S.Ct. 1597] (*Morales*); *People v. McVickers, supra,* 4 Cal.4th at p. 84.)

The standard for determining whether a law violates the ex post facto clause has two components, "a law must be retrospective—that is, 'it must apply to events occurring before its enactment'—and it 'must disadvantage the offender affected by it' . . . by altering the definition of criminal conduct or increasing the punishment for the crime . . . ." (*Lynce v. Mathis* (1997) 519 U.S. 433, 441 [137 L.Ed.2d 63, 117 S.Ct. 891], citation omitted.)

### B. Retroactivity

■ "A law is not retroactive 'merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment.' [Citation.]" (*People v. Grant* (1999) 20 Cal.4th 150, 157 [83 Cal.Rptr.2d 295, 973 P.2d 72].) Rather, a retroactive law " ' "change[s] the

---

[6] For simplicity's sake, we refer to them as a single constitutional provision. (*People v. Frazer* (1999) 21 Cal.4th 737, 754, fn. 15 [88 Cal.Rptr.2d 312, 982 P.2d 180], disapproved on other grounds in *Stogner v. California* (2003) 539 U.S. 607, 610 [156 L.Ed.2d 544, 123 S.Ct. 2446].)

legal consequences of an act completed before [the law's] effective date" namely the defendant's criminal behavior.' [Citation]. In other words, the operative event for retroactivity purposes, and the necessary reference point for any ex post facto analysis, is criminal conduct committed before the disputed law took effect." (*John L. v. Superior Court* (2004) 33 Cal.4th 158, 172 [14 Cal.Rptr.3d 261, 91 P.3d 205], italics omitted.)

The People argue section 1203.097 is being applied prospectively because the challenged conditions were imposed at the time probation was granted, which occurred after the statute became effective. In support of this position they rely on *People v. Bailey* (2002) 101 Cal.App.4th 238, 241–242 [123 Cal.Rptr.2d 729], which held a gang registration requirement could be imposed as a condition of probation under section 186.30 even though the offenses were committed before the enactment of the statute. In addressing the defendant's retroactivity challenge, the court stated: "Section 3 provides that no part of the Penal Code is retroactive unless 'expressly so declared.' The Supreme Court has construed this language to include either 'an express declaration of retroactivity or a clear and compelling implication that the Legislature intended otherwise.' [Citations.] We believe that the Legislature expressed its intent that the registration requirement 'apply to any person convicted in a criminal court' of certain offenses. (§ 186.30.) Because defendant was convicted after the effective date of section 186.30, the law applies to him." (101 Cal.App.4th at p. 243.)

■ Here, unlike in *Bailey*, the language in section 1203.097, imposing mandatory conditions of probation on "a person [who] is granted probation," does not establish "an express declaration" or "a clear and compelling implication" that the Legislature intended the statute to be applied retroactively. (*People v. Hayes* (1989) 49 Cal.3d 1260, 1274 [265 Cal.Rptr. 132, 783 P.2d 719]; see *People v. Grant, supra,* 20 Cal.4th at p. 157.) Absent such a clear indication of intent, section 1203.097 is presumed to operate prospectively. (*People v. Grant, supra,* 20 Cal.4th at p. 157; § 3.)

■ However, as applied to defendant, section 1203.097 operates retrospectively because the mandatory conditions of probation are necessarily dependent upon his earlier offenses. At the time defendant committed the offenses, the law did not require mandatory conditions of probation for offenses involving domestic violence. (See former § 1203 et seq.) The application of section 1203.097 changed the legal consequences of defendant's offenses committed before the statute's effective date, and as such was applied retroactively.

### C. Increase in Punishment

█ A party asserting an ex post facto claim has the ultimate burden of establishing that the measure of the punishment itself has changed. (*Morales,* 514 U.S. at p. 510, fn. 6.) No universal formula exists for determining whether a legislative change increases the measure of punishment. (*Id.* at p. 509.) Rather, whether or not a legislative adjustment creates a sufficient risk of increased punishment is largely a "matter of 'degree.' " (*Ibid.*)

Relying on *Weaver v. Graham* (1981) 450 U.S. 24 [67 L.Ed.2d 17, 101 S.Ct. 960] (*Weaver*), defendant contends the mandatory probation period under section 1203.097 unconstitutionally lengthened his time in custody and reduced his early release from custody. In *Weaver*, the petitioner challenged a statute that revised the formula for conduct credits and reduced the amount of "good time" or "gain time" credits available to prisoners under this formula. (*Weaver, supra,* 450 U.S. at pp. 25, 27.) The court determined the statute violated ex post facto principles because the reduction in gain-time accumulations lengthened the defendant's time in prison and "reduced [his] opportunity to shorten his time in prison simply through good conduct." (*Id.* at pp. 33–34, 36.) What is critical, the court explained, is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was committed. (*Id.* at p. 30.)

The People assert that *Weaver* is not applicable in the instant case because defendant's custody time was unaffected by the application of 1203.097. Rather, they assert *In re Winner* (1997) 56 Cal.App.4th 1481 [66 Cal.Rptr.2d 333] (*Winner*), is more on point. We disagree. In *Winner*, a prison inmate was denied restoration of work time credits he forfeited when he was disciplined for manufacturing alcohol in prison. (*Id.* at p. 1483.) The inmate argued that an amended state regulation, which precluded the restoration of credits for serious disciplinary infractions, could not be applied to him without violating the prohibition against ex post facto laws. (*Ibid.*) The inmate's misconduct occurred after a statutory amendment, eliminating the automatic right to restoration of forfeited credits and giving the director of corrections discretion to restore such credits, but before the challenged state regulation. (*Id.* at pp. 1483–1485, 1487.) The court held the inmate could not show an increase in punishment by raising the speculative possibility that the director would have exercised his discretion to grant restoration. (*Id.* at p. 1487.) The court found no retrospective effect and thus no ex post facto violation because the misconduct had been committed after amendment of the statute. (*Id.* at pp. 1487–1488.) "Because the [d]irector's action was *consistent with the controlling statute as it existed at the time of petitioner's misconduct,* petitioner cannot demonstrate that application of the amended regulations increased the measure of his punishment." (*Id.* at p. 1488, italics added.)

Analogizing to the situation in *Winner*, the People argue that defendant cannot establish a prohibited increase in punishment because defendant can only speculate that he would have received less than a three-year probation term under the law existing at the time of the offense. First, the People's argument is contrary to the well-established rule that a party asserting an ex post facto claim does not have the burden of demonstrating that he would have been sentenced to a lesser term under the prior law. (*Morales, supra*, 514 U.S. at p. 510, fn. 6; *Miller v. Florida* (1987) 482 U.S. 423, 432 [96 L.Ed.2d 351, 107 S.Ct. 2446] (*Miller*).) Second, "[a] necessary implication of the [*Winner*] court's reasoning is that there would have been a retrospective effect had the misconduct been committed . . . *before* amendment of the statute." (*In re Lomax* (1998) 66 Cal.App.4th 639, 647 [78 Cal.Rptr.2d 220], italics added [application of amended regulation preventing reinstatement of credits forfeited for misconduct committed before amended regulation was promulgated violated ex post facto clause]; see also *In re Mikhail* (1999) 70 Cal.App.4th 333, 338 [82 Cal.Rptr.2d 580] [inmate entitled to credit restoration under former statute and regulation].)

Here, unlike in *Winner*, defendant committed the offenses *before* the enactment of section 1203.097. At the time defendant committed the offenses, the length of the probationary term for a section 273.5 violation was discretionary, the only condition being that it could not exceed four years. Section 1203.097 removed the trial court's discretion and imposed a mandatory minimum term of 36 months, along with several other mandatory conditions, including community service and a $400 payment.

■ The People contend that the legislative decision to transform discretionary conditions of probation into mandatory ones does not result in an increase in punishment.[7] However, the removal of a sentencing court's discretion can, indeed, implicate the ex post facto clause. (See *Lindsey v. Washington* (1937) 301 U.S. 397, 400 [81 L.Ed. 1182, 57 S.Ct. 797] (*Lindsey*) [holding amended statute changing sentence from discretionary term to mandatory 15-year term violated ex post facto clause]; *Miller, supra*, 482 U.S. at p. 435 [holding revised sentencing guideline creating "high hurdle" before sentencing judge could exercise discretion violated ex post facto clause]; see also *Williams v. Roe* (9th Cir. 2005) 421 F.3d 883, 887 [applying California law and finding ex post facto violation where amended section 654 removed judge's discretion to impose lighter sentence].) As the court in *Weaver* observed, "a law may be retrospective not only if it alters the

---

[7] We assume, without deciding, that the challenged conditions could have been imposed in 1993. Thus, we do not address the People's alternate argument that the $400 payment is not punitive.

length of the sentence, but also if it changes the maximum sentence from discretionary to mandatory. [Citation.]" (*Weaver, supra,* 450 U.S. at p. 32, fn. 17.)

Although not cited by either party, *Lindsey* is particularly instructive. In *Lindsey*, the court ruled that a law is ex post facto if its effect "is to make mandatory what was before only the maximum sentence." (*Lindsey, supra,* 301 U.S. at p. 400.) There, the petitioners were convicted of grand larceny. (*Id.* at p. 397.) At the time of the offense, the penalty for grand larceny was imprisonment for not more than 15 years. (*Id.* at pp. 397–398.) The statute permitted the imposition of a sentence up to the maximum term and also set a minimum sentence of not less than six months or more than five years. (*Id.* at p. 398.) Once the prescribed minimum sentence elapsed, a parole board could order the prisoner released on parole. (*Ibid.*) A statute enacted after the commission of the offense, but before petitioners' sentencing, required the court to impose the maximum provided by law. (*Ibid.*) It also empowered the parole board to determine the length of each prisoner's confinement up to the maximum term. (*Id.* at pp. 398–399.) Thus, under the law in effect at the time of the offense, the petitioners could have been sentenced to a maximum term of less than 15 years. (*Id.* at p. 400.) The intervening change in law required that they receive a 15-year sentence during which time the parole board had discretion to grant supervised release. (*Ibid.*) In finding an ex post facto violation, the *Lindsey* court reasoned "the measure of punishment prescribed by the later statute is more severe than that of the earlier . . . ." (*Id.* at p. 401.)

Another instructive case not discussed by the parties is *Miller*. There, the court ruled that a revision in a state sentencing statute, which became effective between the date of the petitioner's offense and the date of his conviction resulted in an ex post facto violation because the new guideline was " 'more onerous than the prior law.' " (*Miller, supra,* 482 U.S. at p. 431.) At the time of the offense, the petitioner faced a presumptive sentence of three and one-half years to four and one-half years in prison, but at the time of sentencing the revised guidelines called for a presumptive sentence of five and one-half years to seven years. (*Id.* at p. 424.) The trial court sentenced petitioner to seven years. (*Ibid.*)

The petitioner could not " 'show definitively that he would have gotten a lesser sentence' " under the former guidelines, because the trial judge could have reached the same result by departing from the presumptive range. (*Miller, supra,* 482 U.S. at p. 432.) Nonetheless, the *Miller* court held that the petitioner had been " 'substantially disadvantaged' " by the change in law because under the prior law the sentencing judge would have had to depart from the guidelines to impose a seven-year term of imprisonment and provide a statement of clear and convincing reasons for the departure that was

reviewable on appeal. (*Ibid.*) However, under the revised law, the seven-year term was within the guidelines range and was unreviewable on appeal. (*Id.* at pp. 432–433.) Additionally, the guidelines created a "high hurdle" to the exercise of judicial discretion in imposing a departure sentence by requiring the sentencing judge to find " 'clear and convincing reasons' " that were " 'credible,' 'proven beyond a reasonable doubt,' and 'not . . . a factor which ha[d] already been weighed in arriving at a presumptive sentence.' [Citations.]" (*Id.* at p. 435.) Consequently, the court concluded that the new law, like the law in *Weaver*, " 'makes more onerous the punishment for crimes committed before its enactment.' *Weaver, supra,* [450 U.S. at p.] 36." (*Ibid.*)

As *Lindsey* demonstrates, a change in law that increases the mandatory minimum sentence attached to a crime increases the measure of punishment even if a defendant cannot show that he would have received a more lenient sentence under the former law. (See *Lindsey, supra,* 301 U.S. at pp. 400–401.) Similarly, changes in sentencing rules can violate the ex post facto clause when the rules sufficiently circumscribe judicial discretion, even if the change does not automatically lead to a more onerous result than what would have occurred under the prior law.[8] (See *Miller, supra,* 482 U.S. at pp. 432–433.)

This is not to say, however, that every "amendment having 'any conceivable risk' of lengthening the expected term of confinement raises ex post facto concerns. (*Morales, supra,* 514 U.S. 499, 508.) In *Morales*, a California law allowed the parole board, after holding an initial hearing, to defer subsequent parole suitability hearings up to three years for inmates convicted of multiple homicides, provided it found parole was not reasonably likely to occur sooner. (*Id.* at p. 503.) Finding no retroactive increase in punishment, the high court emphasized that there had been no change in the applicable indeterminate term, in the formula for earning sentence reduction credits, or in the standards for determining either the initial date of parole eligibility or the prisoner's suitability for parole. (*Id.* at p. 507.) The court also observed that the statute, by its own terms, affected a small class of prisoners not likely

---

[8] To the extent the People rely on *People v. Brown* (2001) 96 Cal.App.4th Supp. 1, 39–40 [117 Cal.Rptr.2d 738], for the proposition that the conditions of section 1203.097 are properly applied whether they are mandatory or discretionary, this reliance is misplaced. *Brown*, unlike the instant case, did not involve an ex post facto claim. Rather, the issue was whether the domestic violence probation conditions were properly applied to a defendant convicted of vandalizing his wife's car. (96 Cal.App.4th at p. Supp. 6.) The defendant argued the car was the victim. (*Id.* at p. Supp. 39.) Thus, according to the defendant, the section 1203.097 conditions were not mandatory, and since the vandalism was unrelated to domestic violence, the domestic violence conditions were unreasonable and not within the sentencing court's discretion. (96 Cal.App.4th at p. Supp. 39.) The court determined the conditions of probation were mandatory because defendant's offense involved domestic violence. (*Id.* at pp. Supp. 39–40.) The court further stated that even if the provisions were not mandatory, they were clearly within the sentencing court's discretion. (*Id.* at p. Supp. 40.)

to be paroled, and allowed the board to shorten the time between hearings based on the particular circumstances. (*Id.* at pp. 510–513 . . . .) At bottom, no ex post facto violation occurred because the risk of longer confinement was 'speculative and attenuated' (*id.* at p. 509), and because the prisoner's release date was essentially 'unaffected' by the postcrime change. (*Id.* at p. 513 . . . .)" (*John L. v. Superior Court, supra,* 33 Cal.4th at p. 182, citations omitted.)

In contrast to the law at issue in *Morales,* the penal consequences of defendant's offenses are affected by the application of section 1203.097. The risk of a longer probation term was not "speculative and attenuated" because section 1203.097 removes judicial discretion in setting a minimum term, creating a "sufficient risk" of increasing the measure of punishment for defendant's crimes. (*Morales, supra,* 514 U.S. at pp. 509–510.) Rather, section 1203.097 is more akin to the laws at issue in *Lindsey, Weaver,* and *Miller,* which had the effect of enhancing the range of available prison terms.

Following the reasoning of *Lindsey, Weaver,* and *Miller,*[9] we conclude the application of section 1203.097 increased the measure of defendant's punishment. It is true that the granting of probation is an act of grace and clemency rather than a right given to a defendant. (*People v. Howard* (1997) 16 Cal.4th 1081, 1092 [68 Cal.Rptr.2d 870, 946 P.2d 828]; *People v. Hackler* (1993) 13 Cal.App.4th 1049, 1058 [16 Cal.Rptr.2d 681]; *People v. Superior Court* (*Kirby*) (2003) 114 Cal.App.4th 102, 105–106 [7 Cal.Rptr.3d 440]; but see *People v. Edwards* (1976) 18 Cal.3d 796, 801 [135 Cal.Rptr. 411, 557 P.2d 995] [probation is an alternate form of punishment].) Nevertheless, statutory changes that retroactively impose greater punishment in probation cases violate the ex post facto clause. (See, e.g., *People v. Williams* (1988) 200 Cal.App.3d Supp. 1, 4–6 [246 Cal.Rptr. 464] [imposition of five-year probationary term pursuant to amended statute prohibited by ex post facto clause because under statute in effect when crime committed, defendant could not receive more than three years]; *State v. Mendivil* (1979) 121 Ariz. 600, 601–602 [592 P.2d 1256] [imposition of two years probation pursuant to amended statute prohibited by ex post facto clause because under statute in effect when crime committed, defendant could not receive more than one year

---

[9] The fact that *Lindsey, Weaver,* and *Miller* are pre-*Collins* cases does not alter our conclusion. Specifically, the court in *Morales, supra,* 514 U.S. at page 506, footnote 3, states: "Our opinions in *Lindsey, Weaver,* and *Miller* suggested that enhancements to the measure of criminal punishment fall within the ex post facto prohibition because they operate to the 'disadvantage' of covered offenders. [Citations.] But that language was unnecessary to the results in those cases and is inconsistent with the framework developed in *Collins* . . . ." (Italics and citation omitted.) *Morales* did not overrule *Lindsey, Weaver,* and *Miller,* but distinguished them by noting that the laws there at issue "had the purpose and effect of enhancing the range of available prison terms." (*Id.* at p. 507.)

probation];[10] see also *Weaver, supra,* 450 U.S. at pp. 30–31, 32–33, fn. 17 ["even if a statute merely alters penal provisions accorded by the grace of the legislature" it violates the ex post facto clause if it is both retrospective and imposes greater punishment after the commission of the offense].)

Here, section 1203.097 increased the measure of punishment from what was in effect on the date of defendant's offenses, by removing the trial court's discretion to impose a shorter term and by attaching the mandatory 36-month term, community service condition, and $400 payment.

We are thus left with the inescapable conclusion that application of section 1203.097 to the offenses occurring in 1993 violated the prohibition against ex post facto laws. The instant case must be remanded for sentencing under the law in place when defendant committed the offenses.

## III.

## DISPOSITION

The judgment of conviction is affirmed. The case is remanded for sentencing under the law as it pertained to defendant as of January 3, 1993.

Sepulveda, J., and Rivera, J., concurred.

---

[10] While these cases pre-date *Collins,* the laws at issue had the purpose and effect of enhancing the range of available probation terms. (See *Morales, supra,* 514 U.S. at pp. 506–507.)