Filed 3/11/14  P. v. Gordon CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039553 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1234643) |
| v. | |
| ROY LYNN GORDON, | |
| Defendant and Appellant. | |

## I.     INTRODUCTION

Defendant Roy Lynn Gordon appeals after pleading no contest to making a criminal threat (Pen. Code, § 422)[1] and committing an assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)).  He was placed on probation with various conditions, and he was ordered to pay a number of fines and fees.

On appeal, defendant challenges the imposition of a $500 domestic violence fund fee (§ 1203.097, subd. (a)(5)(A)) and probation conditions that prohibit him from possessing or using alcohol or illegal drugs and from going to places where alcohol or illegal drugs are sold.  We will modify the challenged probation conditions and affirm the judgment as modified.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## II.    BACKGROUND

### A.    *Facts Underlying the Charged Offenses[2]*

At 8:34 p.m. on June 11, 2012, officers responded to the residence defendant shared with his wife.  Defendant's wife told police that defendant had scratched her on the cheek, slapped her twice, grabbed her neck and strangled her, then threw her on the bed, which caused her head to hit the wall.  Defendant had also assaulted her on two prior occasions.  Defendant's wife later stated that during the incident, defendant had "told her not to scream or he would kill her by sticking a knife through her heart."

### B.    *Charges and Plea Agreement*

On June 14, 2012, the District Attorney filed a complaint charging defendant with making a criminal threat (§ 422) and committing an assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)).  On January 7, 2013, defendant pleaded no contest to both charges.  The terms of the plea agreement provided that defendant would be placed on probation, with "full domestic violence terms," and that he would serve four months in county jail.

### C.    *Probation Report*

Defendant was interviewed by the probation officer on February 8, 2013.  He was 57 years old at the time.  He discussed his financial situation, medical needs, and substance abuse history.

Defendant was receiving a Veteran's disability pension of $1,025 per month.  He planned to get a part-time job to supplement his pension.  He thought he could find employment at a hardware store, since he had prior experience.  He had last been employed by a construction firm, working as a carpenter from 1998 to 2005 for $25 per hour.

---

[2] The facts are taken from the probation report.

Defendant had recently been accepted by the Veteran's Administration assisted housing program, so he would be able to rent an apartment for one-third of his net income. He would not be able to participate in that program if he spent 60 or more consecutive days in jail, so he was hoping to have his sentence divided into two blocks of time or participate in a jail alternative program.

Defendant had been diagnosed with mouth and throat cancer in 2010. He had undergone chemotherapy, radiation treatment, and surgery in which one-third of his tongue was removed. His cancer was in remission but was likely to recur. He had to undergo a PET scan every month and an MRI every two months. He took methadone on a daily basis due to the pain from his surgery. He was scheduled to undergo back surgery the following month. He planned to participate in a group to help him deal with posttraumatic stress disorder. He claimed to also have been diagnosed with depression.

Defendant acknowledged that he was an alcoholic. He had completed a 28-day residential treatment program in July of 2012. He had relapsed in September of 2012 and then completed a 90-day residential rehabilitation program. He had not relapsed again, and he continued to participate in a weekly aftercare group as well as AA/NA meetings.

The probation officer's recommendations included imposition of a $400 domestic violence fund fee and various probation conditions. Proposed condition No. 16 provided: "The defendant shall not possess or consume alcohol or illegal substances or knowingly go to places where alcohol is the primary item of sale." Proposed condition No. 17 provided: "The defendant is not to possess or use illegal drugs or illegal controlled substances or go anywhere he/she knows illegal drugs or non-prescribed controlled substances are used or sold."

### D.    *Sentencing*

On April 19, 2013, the trial court suspended imposition of sentence and placed defendant on formal probation for three years. The court imposed a 120-day jail sentence, but the court did not remand defendant into custody because of his need for

3

medical treatment.  The court awarded defendant 10 days of custody credits and set another hearing date "to figure out how to handle the remaining 110 days," indicating it would "modify his sentence in a way he can serve his custody time in an appropriate manner."

The trial court imposed a $500 domestic violence fund fee, as well as a number of other fines and fees.  In addition, the trial court imposed probation conditions Nos. 16 and 17, although the court used slightly different language than that proposed by the probation officer.  The trial court ordered defendant not to "possess or consume alcohol or illegal substances or knowingly go to places where alcohol is the primary item of sale" and "not to possess or use illegal drugs or illegal controlled substances, or go anywhere where illegal drugs or non-prescribed controlled substances are used or sold."

### III.    DISCUSSION

#### A.    *Domestic Violence Fund Fee*

Defendant challenges the $500 domestic violence fund fee imposed pursuant to section 1203.097, subdivision (a)(5)(A).  Defendant first claims the fee must be stricken because the record contains insufficient evidence of his ability to pay the fee.  Alternatively, defendant claims the fee must be reduced to $400 because of the constitutional prohibition against ex post facto laws.  Defendant contends that if either claim was forfeited by his failure to object below, he received ineffective assistance of counsel at trial.

#### 1.    Statutory Provisions

Section 1203.097, subdivision (a) requires certain terms of probation when "a person is granted probation for a crime in which the victim is a person defined in Section 6211 of the Family Code."  One of the requirements is stated in subdivision (a)(5)(A) as follows:  "A minimum payment by the defendant of a fee of five hundred dollars ($500) to be disbursed as specified in this paragraph.  If, after a

4

hearing in open court, the court finds that the defendant does not have the ability to pay, the court may reduce or waive this fee. If the court exercises its discretion to reduce or waive the fee, it shall state the reason on the record."

At the time of defendant's offenses on June 11, 2012, the minimum domestic violence fund fee was $400. (See Stats. 2010, ch. 132, § 1, eff. Aug. 13, 2010.) The minimum fee was increased to $500 effective January 1, 2013. (Stats. 2012, ch. 511, § 1.)

### 2. Forfeiture

The Attorney General contends that by failing to object below, defendant has forfeited his ability-to-pay and ex post facto challenges. The Attorney General further argues that the trial court could impose the minimum domestic violence fee without making any finding of ability to pay, and that it was defendant's burden to request a hearing and argue for imposition of a lesser fee.

Defendant argues that his ability-to-pay and ex post facto claims are not forfeited, and alternatively, that trial counsel was ineffective for failing to object on either ground and for failing to request an ability-to-pay hearing. Because deciding the ineffective assistance claims would require us to address the merits of defendant's ability-to-pay and ex post facto claims, we will proceed to a discussion of those issues. (See *People v. Osband* (1996) 13 Cal.4th 622, 721.)

### 3. Ability to Pay

Defendant suggests that in determining whether the record contains substantial evidence of his ability to pay the $500 domestic violence fund fee, we should be guided by section 1203.1b, subdivision (e), which pertains to certain probation costs. That section defines " 'ability to pay' " as "the overall capability of the defendant to reimburse the costs [of probation]," and specifies that the factors "shall include, but shall not be limited to, the defendant's: [¶] (1) Present financial position. [¶] (2) Reasonably discernible future financial position. In no event shall the court consider a period of more

5

than one year from the date of the hearing for purposes of determining reasonably discernible future financial position. [¶] (3) Likelihood that the defendant shall be able to obtain employment within the one-year period from the date of the hearing. [¶] (4) Any other factor or factors that may bear upon the defendant's financial capability to reimburse the county for the costs." (§ 1203.1b, subd. (e).)

Defendant contends that the record "indicates that his present financial position is poor," pointing out that he had not worked "for over eight years." He claims he has "bleak" prospects for obtaining employment due to his medical needs.

As noted above, the probation report reflected that defendant was receiving a Veteran's disability pension of $1,025 per month and that he planned to get a part-time job to supplement his pension. Defendant was optimistic that he could find employment at a hardware store. His housing expenses would be low, since he had recently been accepted by the Veteran's Administration assisted housing program and would need to pay only one-third of his net income for rent. His concerns about being able to stay in the housing program were addressed by the trial court's stated intent to work out a way for him to serve his remaining 110-day jail sentence "in an appropriate manner." Defendant's regular medical treatment consisted of monthly PET scans and MRI's every two months. Defendant did not express any concern that his medical issues would preclude him from obtaining work.

Thus, the record showed that defendant had stable income, inexpensive housing, and employment prospects. Under the circumstances, substantial evidence supported an implied finding that defendant had the ability to pay a $500 domestic violence fund fee. (Cf. *People v. Phillips* (1994) 25 Cal.App.4th 62, 71 [ability-to-pay finding supported by substantial evidence where defendant expected to earn $800 per month, had low monthly expenses, and "did not offer any objections or corrections to the facts as stated in the probation officer's report"].) Likewise, because of the evidence concerning defendant's financial position, trial counsel could have reasonably determined that an objection on

ability-to-pay grounds would not have been successful, and there is no reasonable probability that an objection would have led to a more favorable result.  (See *Strickland v. Washington* (1984) 466 U.S. 668, 694 (*Strickland*).)

### 4.    Ex Post Facto

Defendant contends that imposition of the $500 domestic violence fund fee violated the state and federal constitutional prohibitions against ex post facto laws.  (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9.)  According to defendant, the trial court must have applied the version of section 1203.097 that became effective on January 1, 2013— after the commission of his offense—because it imposed a $500 fee rather than the $400 minimum fee provided by the prior version of the statute.

" '[T]he ex post facto clauses of the state and federal Constitutions are "aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.' " ' [Citation.]" (*People v. Alford* (2007) 42 Cal.4th 749, 755.)

The parties agree that the domestic violence fund fee required by section 1203.097 is punishment for a criminal act.  (See *People v. Delgado* (2006) 140 Cal.App.4th 1157 [ex post facto clause precluded application of section 1203.097 to a defendant whose offenses predated the statute's enactment].)  However, the parties disagree on whether the trial court actually applied the newer version of section 1203.097, and thus whether the court *increased* defendant's punishment, by imposing a $500 fee rather than the former minimum fee of $400.

Defendant's claim rests on the premise that the trial court intended to impose the minimum permissible fee under section 1203.097, subdivision (a)(5)(A).  The Attorney General asserts that the record does not support this claim and points out that the trial court could have imposed a $500 fee under the prior version of the statute, which simply set a "minimum payment" of $400.  (See Stats. 2010, ch. 132, § 1, eff. Aug. 13, 2010.)  The Attorney General further notes that under both versions of the statute, defendant was free to ask the court to impose a lesser amount.

7

Because the trial court imposed the $500 domestic violence fund fee without making any comment indicating it was imposing the minimum amount, we must presume that the court in its discretion considered and rejected the imposition of the minimum fee of $400, and chose to impose a fee of $500. (See Evid. Code, § 664 ["[i]t is presumed that official duty has been regularly performed"].) Because there was no maximum authorized fee, and the trial court imposed a fee of $500, defendant was not subjected to increased punishment and the fee did not violate the ex post facto prohibition. Further, because the record does not indicate that the trial court intended to order the minimum domestic violence fund fee under section 1203.097, subdivision (a)(5)(A), defendant has not met his burden to show that if his trial counsel had objected, it was reasonably probable that the trial court would have imposed a lower fee. (See *Strickland, supra,* 466 U.S. at p. 694.)

### B. *Probation Conditions*

Defendant contends probation condition No. 16 is unconstitutionally vague and that probation condition No. 17 is unconstitutionally vague and overbroad.

Because the trial court's oral imposition of these conditions was somewhat different from the conditions in the probation report, we must first determine which conditions to review. In general, the oral pronouncement of judgment controls. (See *People v. Gabriel* (2010) 189 Cal.App.4th 1070, 1073.) Further, in this case the trial court did not expressly adopt the conditions as stated in the probation report, and there is no minute order containing the probation conditions. Thus, we will review the probation conditions as stated in the trial court's oral imposition of judgment.

### 1. Overbreadth and Vagueness

"A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad. [Citation.]" (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.) "A probation condition 'must be sufficiently precise for the

probationer to know what is required of him [or her], and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness. [Citation.]" (*Ibid.*)

### 2. Probation Condition No. 16

Probation condition No. 16, as stated in the trial court's oral pronouncement of judgment, requires defendant not to "possess or consume alcohol or illegal substances or knowingly go to places where alcohol is the primary item of sale."

Defendant contends this condition is vague to the extent it requires him not to "possess or consume alcohol or illegal substances," because the condition does not require defendant "to know that he is in possession of or consuming these items." Defendant expresses concern that "he could violate probation unwittingly." The Attorney General agrees this condition "should be modified to include a knowledge requirement."

In light of the Attorney General's concession, we will modify probation condition No. 16 to provide as follows: "The defendant shall not knowingly possess or consume alcohol or illegal substances or knowingly go to places where alcohol is the primary item of sale."

### 3. Probation Condition No. 17

Probation condition No. 17, as stated in the trial court's oral pronouncement of judgment, requires defendant "not to possess or use illegal drugs or illegal controlled substances, or go anywhere where illegal drugs or non-prescribed controlled substances are used or sold."

Defendant first contends this condition is vague because it does not require him to know that he is "possess[ing] or us[ing] illegal drugs or illegal controlled substances." The Attorney General's concession with respect to probation condition No. 16 appears to extend to this aspect of probation condition No. 17, and thus, we will add the word "knowingly" before the word "possess."

9

Defendant also contends probation condition No. 17 is vague and overbroad because it prohibits him from going " 'anywhere' that drugs are sold." He reasons, "this condition could be construed as prohibiting him from visiting entire cities or neighborhoods." Defendant requests this court modify probation condition No. 17 "to specify a certain distance from any location where he knows illegal drugs are used or sold." In his reply brief, defendant suggests the condition could also be modified to permit the probation officer to specify particular places defendant must avoid.

The Attorney General argues that as long as the condition includes a knowledge requirement, it will "fairly warn[] appellant to avoid places where he knows drugs are illegally sold or used." The Attorney General cites to this court's opinion in *People v. Barajas* (2011) 198 Cal.App.4th 748 (*Barajas*). In *Barajas,* this court considered a probation condition that provided: " 'You're not to visit or remain in any specific location which you know to be or which the probation officer informs you to be an area of criminal street gang-related activity.' " (*Id.* at p. 754.) This court upheld that condition, reasoning, "The knowledge condition suffices to give defendant fair warning of what areas to avoid and ensures that he will not be found in violation due to a factual mistake, accident, or misfortune." (*Id.* at p. 760.)

Here, although the probation officer recommended that probation condition No. 17 bar defendant from going "anywhere he/she *knows* illegal drugs or non-prescribed controlled substances are used or sold" (emphasis added), the trial court did not include the word "knows" in its oral pronouncement of this condition. In light of the Attorney General's implicit concession, we will modify probation condition No. 17 to include the word "knows."

We do not believe the condition requires any further modification, however. "A probation condition should be given 'the meaning that would appear to a reasonable, objective reader.' [Citation.]" (*People v. Olguin* (2008) 45 Cal.4th 375, 382.) Further, a

10

probation condition need not "be stated so exactingly as to preclude any possibility of misinterpretation or misapplication." (*Barajas, supra,* 198 Cal.App.4th at p. 762.)

No reasonable, objective reader of probation condition No. 17 would believe defendant is prohibited from being in entire cities or neighborhoods. A reasonable, objective reader would understand the condition applies to specific locations such as residences, businesses, and particular public areas such as parks where he knows that illegal drugs or non-prescribed controlled substances are used or sold. Similarly, it is not necessary for the condition to specifically bar defendant from going anywhere that the probation officer informs him to be a location in which illegal drugs or non-prescribed controlled substances are used or sold. If the probation officer informs defendant that a particular location is one in which illegal drugs or non-prescribed controlled substances are used or sold, defendant will know that he may not go to that location.

For the above-stated reasons, we will modify probation condition No. 17 to provide as follows: "The defendant is not to knowingly possess or use illegal drugs or illegal controlled substances, or go anywhere he knows illegal drugs or non-prescribed controlled substances are used or sold."

## IV.   DISPOSITION

Probation condition No. 16 is modified to provide as follows: "The defendant shall not knowingly possess or consume alcohol or illegal substances or knowingly go to places where alcohol is the primary item of sale."

Probation condition No. 17 is modified to provide as follows: "The defendant is not to knowingly possess or use illegal drugs or illegal controlled substances, or go anywhere he knows illegal drugs or non-prescribed controlled substances are used or sold."

As modified, the judgment is affirmed.

11

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

MIHARA, J.

_____

GROVER, J.