Filed 8/26/25  P. v. Williams CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>SMITTY LEE WILLIAMS,<br><br>        Defendant and Appellant. | B335647<br><br>(Los Angeles County<br>Super. Ct. No. BA318827) |

        APPEAL from an order of the Superior Court of Los Angeles County, Alison S. Matsumoto, Judge.  Affirmed.

        Mary Jo Strnad, under appointment by the Court of Appeal, for Defendant and Appellant.

        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael C. Keller and Charles S. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A "jury convicted Smitty Lee Williams of forcible rape (Pen. Code,[1] § 261, subd. (a)(2)) . . . , forcible oral copulation (§ 288a, subd. (c)(2)), and sexual penetration by a foreign object (§ 289, subd. (a)(1)).  The jury sustained the special circumstance allegation that [Williams] personally used a knife (§ 12022.3, subd.(a)).  [Williams] was sentenced to 15 years to life and a concurrent term of 54 years in state prison." (*People v. Williams* (Apr. 9, 2010, B212342) [nonpub. opn.] [*Williams I*].)  Williams appealed from the judgment, and this court affirmed the judgment.  (*Ibid*.)

This is Williams's second appeal following an order denying him resentencing relief under section 1170.91.  The first appeal followed the trial court's application of the wrong statute, and in 2021, this court remanded the case to the trial court for "a new hearing at which the trial court shall satisfy its statutory obligations under section 1170.91, subdivision (b)." (*People v. Williams* (May 20, 2021, B305218) [nonpub. opn.] [*Williams II*].)  Effective January 1, 2023, the Legislature amended section 1170.91 by, inter alia, adding subdivision (c), which, as Williams admits, would render him ineligible for resentencing relief.

Williams makes two arguments to avoid this conclusion.  First, he contends our disposition in *Williams II* allowed the trial court to consider his petition only under former section 1170.91, subdivision (b) and not the current statute.  Second, he argues because of the many continuances of the hearing on his petition for resentencing relief, his counsel, of which there were several, were ineffective in not ensuring that his petition was heard

---

1  Undesignated statutory citations are to the Penal Code.

before the Legislature amended the statute rendering him ineligible for resentencing relief.

We disagree with both contentions and affirm the trial court's denial of his resentencing petition.

## BACKGROUND

Our background has two components. First, we briefly summarize the facts underlying Williams's crimes to give context to the trial court's ruling on Williams's petition. Second, given Williams's claim of ineffective assistance of counsel, we detail the lengthy procedural history of Williams's petition.

### 1. *Summary of Williams's crimes*

On appeal, Williams provides no facts underlying his convictions. The record, however, includes his resentencing petition in which he summarized those facts, albeit with no citation to the trial record: "Twenty-two-year-old Shawna N. was legally blind, being extremely nearsighted and having no depth perception or peripheral vision. She generally perceived objects 10 to 20 feet away to be shadows. On the evening of April 29, 2000, she traveled by bus from Temecula to San Clemente. At the bus station in downtown Los Angeles, she was unable to transfer to a bus to San Clemente and became lost. At the station she met Daniel Johnson, a fellow passenger, and accepted his offer to stay with him in a motel room for the night. They drove to a motel in a cab driven by [Williams], and they spent the night there.

"The next morning, April 30, 2000, [Williams] appeared at the door and offered to drive Shawna N. and Johnson again. They went to Johnson's uncle's house to solicit a ride to

3

San Clemente. When Johnson went inside the house, [Williams] persuaded Shawna N. to leave with him.

"[Williams] drove Shawna N. to the Los Angeles River, where for a few hours he raped her at knifepoint, forced her to orally copulate him, and inserted his fingers into her vagina. He also stole some jewelry from her. Shawna N. eventually escaped, running naked along the river with [Williams] in pursuit until she was rescued by people on the embankment." (*Williams I*, *supra*, B212342.)

When imposing sentence, the trial court found the aggravating factors outweighed the mitigating factors. Its minute order failed to identify those factors. The court indicated it had read the probation report, which showed that Williams's criminal history dated back to 1985 and included assault to commit rape, multiple counts of infliction of corporal injury on a spouse or cohabitant, assault with a deadly weapon, driving while under the influence, and possession of a controlled substance.[2]

## 2. *Relying on an incorrect Penal Code section, the trial court denies Williams's 2019 section 1170.91 petition and this court reverses and remands*

On January 23, 2019, Williams filed a pro per resentencing petition pursuant to section 1170.91. Williams alleged he suffers from posttraumatic stress disorder because of his military service between 1974 and 1977. Williams also alleged when the trial court sentenced him, the trial court did not consider his military

---

[2] Williams asserts on appeal without citation to the record that he is "unable to acquire a transcript of the original sentencing proceeding."

4

service as a mitigating factor. Williams verified that the matters stated in his petition were true.

The court appointed counsel for Williams. Later, the court denied the petition and described it as a section 1170.95[3] petition, not a section 1170.91 petition.

On May 20, 2021, this court reversed because the trial court did not consider Williams's eligibility for resentencing under section 1170.91. (*Williams II*, *supra*, B305218.) We explained that section 1170.91 applied only to the determinate term and resentencing would not affect the indeterminate term. (*Williams II*, at fn. 5.) Our disposition provided: "The order is reversed, and the matter is remanded for a new hearing at which the trial court shall satisfy its statutory obligations under section 1170.91, subdivision (b)." (*Williams II*, *supra*, B305128.)

### 3.    *Events after remand*

The trial court initially set the petition for a hearing on June 29, 2021. The petition, however, was not heard until October 25, 2023. Our record indicates the hearing on the petition was continued 17 times, and to the extent the record reveals, for reasons including to accommodate defendant's request, to appoint four different defense counsel, and to await the decision on a writ,[4] and on one occasion, because Williams

---

[3] Briefly summarized, section 1170.95, subsequently renumbered as section 1172.6, provides resentencing relief to defendants convicted of murder attempted murder or manslaughter who could no longer be convicted under the current definition of those crimes, which the Legislature amended by Senate Bill No. 1437 effective January 1, 2019.

[4] On January 12, 2023, Williams filed in pro per a petition for writ of mandate to compel the trial court to hold a hearing on

5

refused to board the bus to the courthouse.[5]  As noted in footnote 4, *ante*, and for reasons not revealed in our record, Williams has had four different defense counsel representing him during the period between issuance of the remittitur in *Williams II* on July 21, 2021 and the trial court's entry of its order denying Williams's resentencing petition on October 25, 2023.  George Quevedo was his counsel at the October 25, 2023 hearing at which the trial court denied his second petition.

his section 1170.91 petition.  On August 16, 2023, this court denied the petition.

[5]  The parties agreed to continue the hearing to August 16, 2021.  On August 16, 2021, the court continued the case to September 29, 2021.  Defense counsel requested a continuance to October 22, 2021.  On October 22, 2021, defense counsel was relieved, and the hearing was reset for November 1, 2021.  On November 1, 2021, the court indicated it would appoint new counsel for Williams.  On November 2, 2021, the court appointed new counsel and continued the hearing to January 20, 2022.  At some point, the court appointed yet another counsel, who appeared at the January 20, 2022 hearing, at which time the hearing was continued to March 2, 2022.  On March 2, 2022, the court continued the matter to April 4, 2022, and again to May 3, 2022.  On May 3, 2022, the court continued the hearing to June 22, 2022, then to July 22, 2022, and again to August 31, 2022.  On August 31, 2022, the court relieved Williams's third counsel.  The hearing was reset for September 27, 2022.  Still again, the hearing was continued to October 19, 2022 and thereafter, to February 16, 2023.  After checking on Williams's writ petition, the court continued the hearing to May 4, 2023.  On May 4, 2023 the court set the hearing for July 21, 2023, which was continued to September 15, 2023.  The court did not proceed on that day because Williams refused to board the bus to the courthouse.  The court then continued the hearing to October 25, 2023.

On June 26, 2023, Williams filed another petition for resentencing pursuant to section 1170.91. He acknowledged that under an amendment to section 1170.91, effective January 1, 2023, he was not eligible for resentencing because he was convicted of an offense that requires registration as a sex offender.[6] Williams, however, argued: "Mr. Williams has suffered a three[-]year delay in having his 1170.91 Petition 'heard.' Mr. Williams contends this unusually long delay in having the court hear his 1170.91 Petition has severely prejudiced him and denied him due process, and he was additionally denied effective assistance of counsel under the Sixth Amendment, and as a remedy to this situation, Mr. Williams should be provided with an exception to the subsection (c) exception." In sum, Williams contended, the trial court should have applied the earlier version of the statute, which did not exclude defendants required to register as sex offenders.

On October 10, 2023, the People opposed the motion for resentencing. The People argued the version of the statute effective January 1, 2023 rendered Williams ineligible for resentencing.

4.     ***The trial court denies Williams's 2023 resentencing petition***

On October 25, 2023, the trial court held a hearing and denied Williams's petition. The court indicated Williams suffered from posttraumatic stress disorder resulting from his military service. The court concluded, (1) "Petitioner has not

---

[6] The Sex Offender Registration Act is codified in section 290.

7

demonstrated in his petition that his military service was not considered as a factor in mitigation at his original sentence," and (2) "petitioner's convictions are for offenses requiring registration pursuant to subdivision (c) of section 290" and therefore he is ineligible for resentencing. The court further explained, "[D]espite numerous opportunities to amend the petition, over the course of several years, petitioner has not, at any point, provided evidence that the trial court did not consider those circumstances as a factor in mitigation at the time of his original sentencing."

## DISCUSSION

Section 1170.91 currently provides in pertinent part: "(a) If the court concludes that a defendant convicted of a felony offense is, or was, a member of the United States military who may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of the defendant's military service, the court shall consider the circumstance as a factor in mitigation when imposing a sentence. This consideration does not preclude the court from considering similar trauma, injury, substance abuse, or mental health problems due to other causes, as evidence or factors in mitigation. (b)(1) A person currently serving a sentence for a felony conviction, whether by trial or plea, who is, or was, a member of the United States military and who may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of the person's military service may petition for a recall of sentence, before the trial court that entered the judgment of conviction in the case, to request resentencing if the circumstance of suffering from sexual trauma, traumatic brain

8

injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of the person's military service was not considered as a factor in mitigation at the time of sentencing.  [¶] . . . [¶]  *(c)  This section does not apply to a person convicted of, or having one or more prior convictions for, an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or an offense requiring registration pursuant to subdivision (c) of Section 290."* (§ 1170.91, italics added.)

The prior version of the statute, effective January 1, 2019 through December 31, 2022, allowed a person to petition for recall of sentence if "[t]he circumstance of suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of the person's military service was not considered as a factor in mitigation at the time of sentencing." (Former § 1170.91, subd. (b)(1)(A) ); Stats. 2018, ch. 523, § 1, eff. Jan. 1, 2019.)  The 2019 statute in effect at the time Williams filed his resentencing petition did not exclude from relief defendants convicted of an offense requiring registration as a sex offender.

On appeal, Williams "requests that this Court vacate the trial court's October 25, 2023, ruling, denying his petition for resentencing pursuant to section 1170.91 and order the trial court to comply with this Court's original remand order, issued on May 20, 2021 in Case No B305218."  He claims:  (1) the trial court improperly expanded the scope of this court's remand order in *Williams II*, and (2) defense counsel "collectively" rendered ineffective assistance in failing to ensure the trial court decided his resentencing petition before January 1, 2023, the effective

9

date of subsection (c) excluding from eligibility defendants, like Williams, required to register as sex offenders.

Williams's arguments fail for the reasons set forth by our colleagues in the Fourth District in *People v. Sherman* (2023) 91 Cal.App.5th 325 (*Sherman*).  The defendant in *Sherman* raped and sexually assaulted numerous women, and the trial court sentenced him to an indeterminate term of 123 years to life.  (*Id.* at pp. 327–328.)  In 2020, the defendant filed a motion for resentencing under former section 1170.91 in which he argued he suffered from substance abuse problems because of his military service.  (*Sherman*, at p. 328.)  The trial court denied the motion and found no connection between the defendant's mental health issue related to the defendant's military service and his sex offenses.  (*Id.* at p. 329.)  The defendant's appeal was heard after the January 1, 2023 effective date of the amendment adding subdivision (c) to section 1171.91.  (*Sherman*, at pp. 329–330.)  Even though the defendant's resentencing motion had been heard by the trial court while former section 1171.91 was in effect, the appellate court held the amended statute, effective January 1, 2023, governed the appeal.  (*Sherman*, at p. 330.)

To reach its conclusion, *Sherman* first considered the history of section 1170.91, which reflects several amendments since 2014, including a 2022 amendment making persons with indeterminate sentences eligible for resentencing relief, making subsection (b) retroactive; and rendering defendants required to register as sex offenders ineligible for relief:  "Section 1170.91 was enacted in 2014.  The original statute merely required courts to consider as a mitigating factor for determinate sentencing certain specified qualifying conditions the defendant may be suffering as a result of his or her military service—sexual

10

trauma, traumatic brain injury, posttraumatic stress disorder, substance abuse, or mental health problems. [Citations.] As amended, this sentencing provision is now contained in section 1170.91, subdivision (a). [¶] In 2018, the Legislature added subdivision (b) to section 1170.91. Subdivision (b) authorizes retrospective relief for previously sentenced criminal defendants who may suffer from one of the qualifying conditions as a result of their military service. As originally enacted, subdivision (b) allowed a defendant who was sentenced before January 1, 2015, to petition the court for a recall of the sentence and request resentencing 'pursuant to subdivision (a)' if his or her qualifying condition 'was not considered as a factor in mitigation at the time of sentencing.' [Citation.] Like subdivision (a), subdivision (b) originally applied only to defendants who were eligible for determinate sentences. [Citation.] [¶] In 2022, the Legislature amended the statute again. (Stats. 2022, ch. 721, § 1, eff. Jan. 1, 2023.) The 2022 amendment both expanded and restricted eligibility for relief. In relevant part, it expanded subdivisions (a) and (b) to include those serving indeterminate sentences; it eliminated the requirement that the defendant must have been sentenced before January 1, 2015, to be eligible for resentencing; and it added a provision explicitly stating that subdivision (b) 'shall apply retroactively (§ 1170.91, subd. (b)(10)). At the same time, however, it restricted eligibility by adding subdivision (c), a carve-out provision stating that '[t]his section does not apply to a person convicted of, or having one or more prior convictions for, an offense specified in clause (iv) of paragraph (C) of paragraph (2) of subdivision (e) of Section 667 or an offense requiring registration pursuant to subdivision (c) of Section 290.'

11

(§ 1170.91, subd. (c).)  These changes became effective on January 1, 2023." (*Sherman, supra,* 91 Cal.App.5th at pp. 329–330.)

After reviewing this history, *Sherman* rejected "retroactivity concerns" because "[s]ection 1170.91 is a remedial statute designed to allow the trial court to ameliorate the effects of a potentially excessive sentence for criminal defendants who may suffer from qualifying mental health conditions or substance abuse as a result of their military service.  By amending section 1170.91 to add subdivision (c)—a carve-out provision making certain groups of defendants who were previously eligible for relief categorically ineligible—the Legislature effectively accomplished a partial repeal of the statute.  [Citation.]  When a pending matter rests solely on a statutory basis, and no rights have vested under the statute, a repeal or partial repeal of the statutory right or remedy operates prospectively and applies to the pending case." (*Sherman, supra,* 91 Cal.App.5th at p. 331.)

*Sherman* then addressed legislative intent:  "The Legislature evidently intended to eliminate the general exclusion for indeterminate sentences and at the same time replace it with a more targeted carve-out for the specified disqualifying offenses. In these circumstances, it would defeat the Legislature's intent to apply the expanded eligibility provision to pending cases, but not the accompanying replacement provision restricting eligibility." (*Sherman, supra,* 91 Cal.App.5th at p. 333.)

*Sherman* thus held the 2023 version of the statute applies to petitions pending before January 1, 2023, including those on appeal. (*Supra,* 91 Cal.App.5th at pp. 333–334.)  Because at the time of his appeal, the defendant was categorically ineligible for relief under the amended statute, the appellate court affirmed

12

the order denying the defendant relief even "assuming that the trial court erred" in finding him ineligible for relief under the prior version of the statute. (*Id.* at p. 334.)

Similarly, here, assuming arguendo the trial court erred in how it applied section 1170.91, and even assuming, for argument's sake, Williams's "collective" counsel rendered ineffective assistance by not having his petition heard before the effective date of section 1170.91, subsection (c), Williams is now categorically ineligible for relief. Simply put, the remedy he seeks is not available under the current statute.

In his reply brief, Williams argues *Sherman*'s holding that courts must apply the amended statute was merely dicta. We do not agree. *Sherman*'s holding that the Court of Appeal had to apply the current version of the statute was not dicta because the court applied the 2023 version to conclude that the defendant was categorically ineligible for relief. (*Sherman, supra,* 91 Cal.App.5th at p. 334.)

In his reply brief, Williams also argues *Sherman* was wrongly decided because he had a vested right in the trial court exercising its discretion under the former statute, and a legislative act that removes that discretion violates ex post facto principles. The prohibition against ex post facto laws applies, inter alia, where a new law postdating the date of a crime increases punishment for that crime. (*People v. Hill* (2024) 100 Cal.App.5th 1055, 1067.)

As for William's claim of having a vested right, *Sherman* expressly rejected that argument: "Here, Sherman is asserting a purely statutory right to be resentenced, but he has no vested right to resentencing under section 1170.91 because '[u]ntil it is fully enforced, a statutory remedy is merely an " 'inchoate,

13

incomplete, and unperfected' " right, which is subject to legislative abolition.' [Citation.] Accordingly, we must apply the current version of section 1170.91 in resolving this appeal, including the carve-out in subdivision (c)." (*Sherman, supra*, 91 Cal.App.5th at pp. 331–332.)

To support his ex post facto and vested rights challenges, deeming them "dual concepts," Williams relies heavily on *People v. Delgado* (2006) 140 Cal.App.4th 1157 (*Delgado*). *Delgado* does not support Williams's challenges.

In *Delgado,* between the time the defendant committed his crime and the time he was sentenced, the law governing probation of persons committing crimes involving domestic violence changed to make certain probation terms mandatory. (*Supra*, 140 Cal.App.4th at p. 1171.) The appellate court held the change increased punishment for those crimes in violation of the constitutional prohibition against ex post facto law. (*Ibid.* ["Here, section 1203.097 increased the measure of punishment from what was in effect on the date of defendant's offenses, by removing the trial court's discretion to impose a shorter term and by attaching the mandatory 36-month term, community service condition, and $400 payment."].) The court explained, "[T]he mandatory conditions of probation are necessarily dependent upon his earlier offenses. At the time defendant committed the offenses, the law did not require mandatory conditions of probation for offenses involving domestic violence." (*Delgado*, at p. 1165.) In contrast to *Delgado*, section 1170.91 does not impose punishment, but instead provides ameliorative postconviction sentencing relief to certain defendants.[7]

_____

[7] In his reply brief, Williams relies on *Lynce v. Mathis* (1997) 519 U.S. 433. *Lynce* does not assist him. There, the

14

## DISPOSITION

The order denying Smitty Lee Williams's resentencing petition is affirmed.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.                    WEINGART, J.

---

Supreme Court held that a Florida law cancelling provisional custody credits after they had been awarded and after the defendant had been released from custody violated the constitutional prohibition against ex post facto laws.  The Supreme Court explained:  "To fall within the *ex post facto* prohibition, a law must be retrospective—that is, 'it must apply to events occurring before its enactment'—and it 'must disadvantage the offender affected by it,' [citation], by altering the definition of criminal conduct or increasing the punishment for the crime . . . ."  (*Id*. at p. 441.)  Here, the modification in section 1170.91 did not apply to events occurring before its enactment.  The amendment to section 1170.91 did not increase his punishment from the time he committed his offense.  It also did not alter the definition of his criminal conduct.

15