Filed 11/13/15  P. v. Rivera CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>EFRAIN RIVERA,<br><br>        Defendant and Appellant. | F068301<br><br>(Super. Ct. No. F12907216)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Wayne R. Ellison, Judge.

Hilda Scheib, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Caely E. Fallini, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Efrain Rivera, age 58, appeals from a judgment of conviction on multiple counts of sexual assault by sodomy against a child, and of forcible sodomy against a minor. Rivera committed these offenses against his daughter when she was between the ages of

12 and 15 and he was between 46 and 49 years old. He was also convicted of having contact or communication with a minor with the intent to commit a sexual offense. Rivera committed the latter offense against his 11-year-old granddaughter. The trial court imposed a total indeterminate sentence of 180 years to life in prison, plus a determinate prison term of 17 years.

This appeal presents a question regarding the admissibility of a confession Rivera made to police. The confession was allegedly coerced and obtained in violation of the rules articulated in *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*). However, Rivera failed to raise the issue below, and now attempts to advance those arguments in the context of an ineffective assistance of counsel claim.

Rivera also alleges sentencing error as to the crimes committed against his daughter in violation of Penal Code section 269, subdivision (a)(3). He claims the trial court misinterpreted the relevant statutory authorities as requiring consecutive prison terms for each offense, and thus seeks remand for a new sentencing hearing. We affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

On June 2, 2012, officers from the Reedley Police Department responded to a 911 call made by Rivera's adult son concerning inappropriate behavior by Rivera towards two of his biological granddaughters. The grandchildren, then ages 11 and 12, had reported that Rivera showed them photographs of his penis and asked the older grandchild to help him coax the younger one into have sexual relations with him. Rivera was taken into custody and questioned about the allegations. He denied any wrongdoing, and was released without charges.

When police investigated the matter further, two of Rivera's daughters came forward to reveal that he had raped them when they were minors. L., who is now in her late 30's, told investigators that Rivera sodomized her on multiple occasions beginning when she was approximately 10 years old. The abuse occurred while the family was

2.

living in Mexico. M., now age 24, similarly claimed that Rivera had forced her to submit to anal sex during a four-year period that began when she was 12 years old. Rivera's abuse of Maria took place in Reedley.

On June 26, 2012, detectives attempted to record a "pretext call" made by M. to her father for the purpose of corroborating her allegations against him. Rivera made incriminating statements during this conversation, but the recording equipment malfunctioned, leaving police without definitive proof of his admissions. In light of this setback, L. agreed to participate in a monitored phone conversation with Rivera approximately one week later. In the second pretext call, which was successfully recorded, Rivera admitted to molesting L. and M. when they were children.

Following the second pretext call, the Reedley Police Department contacted Rivera to ask if he would participate in a voluntary interview. He agreed, and made arrangements to meet with law enforcement officials on a particular date and time. On July 17, 2012, Rivera drove himself to the police station, met with a Spanish-speaking officer, and spent approximately one hour answering questions about the pending investigation. The interview began with a discussion of the allegations concerning his granddaughters, which Rivera characterized as misunderstandings. At approximately 14 minutes into the interview, Rivera was confronted with the information police had obtained from L. and M. He promptly admitted the truth of his daughters' allegations, and spent the rest of the interview providing details of how and when the abuse had occurred.

Rivera was subsequently charged by amended information with aggravated sexual assault of a child under the age of 14 by sodomy (Pen. Code,[1] § 269, subd. (a)(3)/Counts 1-12); sodomy by force against a minor 14 years of age or older (§ 286, subd. (c)(2)(C)/Counts 13-14); and contact or communication with a minor with

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

intent to commit a sexual offense (§ 288.3, subd. (a)/Count 15). Counts 1 through 14 were alleged to have been committed against M. during a time period spanning from July 2003 to May 2007. Count 15 was alleged to have been committed in Spring 2012 against one of the grandchildren whose allegations had prompted the initial investigation. The charges were tried before a Fresno County jury in September 2013.

The prosecution's case-in-chief consisted of testimony from thirteen witnesses including M., L., various law enforcement officers, health care professionals who had evaluated the victims, and other members of Rivera's family. The defense rested without presenting any evidence. The trial testimony pertaining to Count 15 is not relevant to the issues raised on appeal and therefore will not be summarized.

M. testified that Rivera first sodomized her when she 12 years old. He subjected her to the same form of abuse (i.e., anal sex) on a weekly basis, approximately two to three times per week, until sometime around her 16th birthday. Because of her father's alleged pattern of using physical violence against the women in her family, she kept the abuse a secret until the accusations surfaced about his behavior towards her nieces. M. also testified to the admissions made by Rivera during the first pretext call.

M.'s statements were partially corroborated by the testimony of her mother, who was still married to the defendant at the time of trial but had been separated from him since 2007. The mother testified that she once caught Rivera locked inside of a bathroom with M., which was an incident that M. had described on the witness stand. M.'s mother also confirmed that Rivera had been physically abusive throughout their marriage.

L. was permitted to testify to prior uncharged acts of sexual misconduct pursuant to Evidence Code section 1108. She described how Rivera had repeatedly taken her to an isolated location on their property in Mexico and forcibly sodomized her. These events occurred when she was approximately 10 years old. L.'s testimony also facilitated the prosecution's introduction of evidence concerning Rivera's admissions during the second pretext call, and evidence of his attempt to dissuade the victims from testifying against

4.

him. L. had received a letter from Rivera in September 2012 which threatened that if they did not "withdraw all the accusations," he would harm her and her mother upon his release from custody.

The defendant's confession to police was introduced through the testimony of Sergeant Hector Aleman, who had conducted the interview with Rivera in Spanish. Although the session was recorded on video, the jury had to rely on Sergeant Aleman's verbal summary of the questions and answers. Muted portions of the video were admitted to highlight certain nonverbal responses such as Rivera's tearful reactions to the questioning.

The jury returned guilty verdicts on all counts. On October 25, 2013, the trial court imposed the following sentence: As to Counts 1 through 12, consecutive indeterminate terms of 15 years to life in prison, resulting in a total indeterminate term of 180 years to life. As to Counts 13 and 14, two consecutive eight-year terms. A consecutive one-year term was imposed for Count 15, thus adding a total determinate prison term of 17 years to the indeterminate life sentence. A timely notice of appeal was filed on October 28, 2013.

## DISCUSSION

**Admissibility of the Confession to Police**

The admissibility of Rivera's confession to police was not disputed at trial. Defense counsel actually conceded the propriety of the circumstances under which the admissions were made. On appeal, however, Rivera contends that the confession was involuntary and obtained in violation of his *Miranda* rights. Anticipating the inevitable forfeiture analysis, he also submits that his trial attorney rendered constitutionally deficient performance by failing to raise these issues below. We reject his claims.

Forfeiture

"Evidence Code section 353, subdivision (a) allows a judgment to be reversed because of erroneous admission of evidence only if an objection to the evidence or a

5.

motion to strike it was 'timely made and so stated as to make clear the specific ground of the objection.'" (*People v. Demetrulias* (2006) 39 Cal.4th 1, 20.)  This code section operates as a rule of forfeiture in the context of *Miranda* violations and constitutional challenges to the voluntariness of a confession.  (*People v. Linton* (2013) 56 Cal.4th 1146, 1166, 1170 (*Linton*); *People v. Huggins* (2006) 38 Cal.4th 175, 240, fn. 18; *People v. Polk* (2010) 190 Cal.App.4th 1183, 1194.)  "Constitutional claims raised for the first time on appeal are not subject to forfeiture only when 'the new arguments do not invoke facts or legal standards different from those the trial court itself was asked to apply, but merely assert that the trial court's act or omission, insofar as wrong for the reasons actually presented to that court, had the additional legal consequence of violating the Constitution.'  [Citations.]  However, '[a] party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct.'" (*People v. Tully* (2012) 54 Cal.4th 952, 979-980 (*Tully*).)  Since Rivera's trial counsel conceded the admissibility of his confession, the issue has been forfeited for purposes of appeal.  (*Linton*, *supra*, 56 Cal.4th at p. 1166.)

Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, an appellant must show that "(1) counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficiencies resulted in prejudice." (*People v. Centeno* (2014) 60 Cal.4th 659, 674.)  The test for prejudice is whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984) 466 U.S. 668, 694 (*Strickland*).)  "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." (*Id.* at p. 695.)

1. *Miranda* Issues

If a defendant is subjected to custodial interrogation without being advised of his or her Fifth Amendment rights under *Miranda*, any statements made during the interrogation cannot be used in the prosecution's case-in-chief. (*People v. Lessie* (2010) 47 Cal.4th 1152, 1162; *People v. Thornton* (2007) 41 Cal.4th 391, 432.) "Absent 'custodial interrogation,' *Miranda* simply does not come into play." (*People v. Mickey* (1991) 54 Cal.3d 612, 648.) Rivera argues that his interview with Sergeant Aleman began as a consensual encounter, but turned into a custodial situation once he was confronted with accusatory questions about his daughters.

"Interrogation consists of express questioning or of words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." (*People v. Johnson* (1992) 3 Cal.4th 1183, 1224.) Custodial interrogation occurs when a reasonable person in the suspect's position would believe their freedom of action has been "curtailed to a 'degree associated with formal arrest.'" (*Berkemer v. McCarty* (1984) 468 U.S. 420, 440.) Whether a person is in custody is an objective test, and Rivera's status at the time of his confession must be determined by an independent review of the undisputed facts in the record. (*Linton*, *supra*, 56 Cal.4th at p. 1167; *People v. Bacon* (2010) 50 Cal.4th 1082, 1105 ["we independently determine, from the undisputed facts and facts properly found by the trial court, whether the challenged statement was illegally obtained."].)

"California courts have identified a number of factors relevant to this determination. While no one factor is conclusive, relevant factors include: '(1) [W]hether the suspect has been formally arrested; (2) absent formal arrest, the length of the detention; (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of the questioning.' [Citations.] [¶] Additional factors include: '[W]hether the suspect agreed to the interview and was informed he or she could terminate the questioning, whether police informed the person he or she was considered a

witness or suspect, whether there were restrictions on the suspect's freedom of movement during the interview, and whether police officers dominated and controlled the interrogation or were "aggressive, confrontational, and/or accusatory," whether they pressured the suspect, and whether the suspect was arrested at the conclusion of the interview.'" (*People v. Bejasa* (2012) 205 Cal.App.4th 26, 35-36.)

As applied to the record before us, nearly all of these factors indicate Rivera was not in custody at the time of his confession. He prearranged the date and time of his meeting with Sergeant Aleman, drove himself to the interview, and received an explicit advisement that he was neither under arrest nor detained, and could leave at any time. Although the questioning occurred at a police station, there is no evidence Rivera's freedom of movement was restricted. The one-on-one interview was relatively short, lasting approximately one hour including "a few short breaks" of "two or three minutes at a time." Sergeant Aleman's trial testimony suggests that Rivera might not have been arrested at the conclusion of the interview, but the record is otherwise silent as to that factor.

The accusatory nature of the questioning provides some support for appellant's position, but respondent correctly observes that Rivera knew he was a suspect in a criminal investigation when he agreed to come to the police station. Finally, as best we can tell from a cold transcript, Sergeant Aleman was not particularly aggressive or pressuring during the interview. Rivera seems to have shown little hesitation in confessing to his crimes once he learned the police had spoken to his daughters.

Based on the totality of the circumstances, we conclude Rivera was not subjected to custodial interrogation. Given the weight of the evidence in support of this conclusion, appellant has failed to establish that a reasonably competent attorney would not have refrained from alleging a *Miranda* violation in this case.

2.  Voluntariness

An involuntary confession is inadmissible under the due process clause of the Fourteenth Amendment to the federal Constitution and article I, sections 7 and 15, of the California Constitution.  (*People v. Holloway* (2004) 33 Cal.4th 96, 114; *People v. Benson* (1990) 52 Cal.3d 754, 778.)  "'In general, a confession is considered voluntary "if the accused's decision to speak is entirely 'self-motivated' [citation], i.e., if he freely and voluntarily chooses to speak without 'any form of compulsion or promise of rewards....' [Citation.]"  [Citation.]  However, where a person in authority makes an express or clearly implied promise of leniency or advantage for the accused which is a motivating cause of the decision to confess, the confession is involuntary and inadmissible as a matter of law.'"  (*Tully*, *supra*, 54 Cal.4th at pp. 985-986.)  It is the prosecution's burden to establish voluntariness by a preponderance of evidence.  (*Id.* at p. 993.)

Rivera claims his confession was coerced by implied promises of leniency.  This assertion raises two distinct questions: was there a promise of leniency, and if so, was it the "motivating cause" of the decision to confess?  (*Linton*, *supra*, 56 Cal.4th at p. 1176; *Tully*, *supra*, 54 Cal.4th at p. 986.)  To answer these questions, we must again consider the totality of the circumstances.  (*Tully*, at p. 986.)

The alleged promises of leniency were made after Sergeant Aleman disclosed his knowledge of L.'s and M.'s claims of abuse.  The sergeant remarked that both girls had "suffered a lot."  Rivera replied, "It's very bad sir.  I suffered more, well, they did more because – but only God knows how much I've suffered because I have to leave them to come and have my life but…."  Rivera did not complete his sentence, and Sergeant Aleman asked him, "Do you want help?"  Rivera said "Yes," which led to the following exchange:

Rivera:      But from a man to a man I ask you, I want all the help I can
             get, if I deserve it, right?  And if not, at least let me work a

9.

bit, even if it is raining now – now in a part, because I want to fix some things about my [child support].

Sgt. Aleman: Sorry?

Rivera: I still have my youngest son (unintelligible). But if you don't give me that opportunity, well, just do whatever you want with me sir. Follow the law because I have always respected – only sometimes one in its own mind, I think it doesn't – doesn't work.

Sgt. Aleman: To – to get help, those that get help, those that get conditions to work, the court wants to know what – what – that they feel sorry for what happened and to feel sorry, we need to know. … [T]ell me what happened with you. Tell me – tell me what happened. She already told us, we already know what happened….

Rivera went on to discuss his recent telephone conversation with M. and made vague admissions of mistreating her when she was approximately 12 years old. He then paused and said, "Please, not anymore." Sergeant Aleman responded, "As I tell you, Efrain, so that the court would feel sorry for you, we have to know what happened. I know that you don't want to talk about it. I understand. I understand that, but now is [the] time. Now is the time. There won't be another chance." Rivera thereafter provided the bulk of his incriminating statements about the crimes involving M.

These excerpts arguably raise a question of fact in terms of whether or not Sergeant Aleman made implied promises of leniency. However, to show professional incompetence under the first prong of the *Strickland* test, Rivera must also demonstrate that pursuing the issue would not have been an exercise in futility. (See *People v. Memro* (1995) 11 Cal.4th 786, 834 [trial counsel need not assert arguments of doubtful merit simply to avoid an ineffective assistance claim].) It must be reasonably probable that the

10.

trial court would have found the alleged promises of leniency to be the motivating cause of his decision to confess. Under the totality of the circumstances, and accounting for the preponderance of evidence standard against which the prosecution's arguments would have been measured, we are not convinced that Rivera's trial counsel provided deficient representation by choosing not to litigate this issue. Moreover, were we to assume a reasonably competent defense attorney could have successfully moved to exclude all evidence of Rivera's confession to police, the ineffective assistance claim would still fail for lack of prejudice.

As discussed, prejudice in this context means that but for counsel's error, it is reasonably probable the defendant would have achieved a more favorable result at trial. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" (*People v. Ledesma* (1987) 43 Cal.3d 171, 218.) Thus, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." (*Strickland*, *supra*, 466 U.S. at p. 696.)

Here, the record provides overwhelming support for the jury's verdict independent of any evidence that Rivera confessed to police. Proof of Rivera's admission of guilt was established through evidence of the pretext calls with L. and M. Evidence of the defendant's attempt to dissuade witnesses from testifying against him was highly probative and damaging. Above all else, the victims' testimony was compelling and uncontroverted. We perceive no likelihood that the outcome of this case would have been different but for defense counsel's failure to challenge the admissibility of Rivera's statements to police. For this reason alone, the ineffective assistance of counsel claim fails.

**Sentencing Issues**

Rivera challenges the trial court's imposition of consecutive sentences for Counts 1 through 12, which involved violations of section 269, subdivision (a)(3) during

the period of July 2003 to July 2005. At the time of those offenses, section 269 prescribed a mandatory sentence of imprisonment for 15 years to life. (Former § 269, subd. (b) [amended by Stats. 2006, ch. 337 (S.B. 1128), § 6].) However, the statute did not specify whether trial courts had discretion to impose concurrent sentences in the event of multiple convictions. Our district addressed this issue in *People v. Jimenez* (2000) 80 Cal.App.4th 286, 291 (*Jimenez*), and held that sentencing for multiple violations of (former) section 269 was controlled by section 667.6, subdivisions (d) and (e), which require the imposition of consecutive terms for certain types of sex crimes, including sodomy. (*Jimenez*, *supra*, 80 Cal.App.4th at pp. 291-292.) We reiterated our interpretation of these statutes in *People v. Glass* (2004) 114 Cal.App.4th 1032, 1037-1038.

In 2006, section 269 was amended to expressly require that trial courts impose consecutive sentences for each offense described therein "if the crimes involve separate victims or involve the same victim on separate occasions as defined in subdivision (d) of Section 667.6." (§ 269, subd. (c).) Rivera's sentencing arguments are based on the 2006 amendment. He first speculates that the trial court imposed consecutive terms pursuant to the current version of section 269, and therefore committed an ex post facto violation. Alternatively, he contends the Legislature's amendment of the statute in 2006 shows that *Jimenez* was wrongly decided. We reject both claims.

Ex Post Facto Claim

Our state and federal Constitutions prohibit ex post facto laws. (U.S. Const., art. 1, § 10; Cal. Const., art. I, § 9; *People v. Delgado* (2006) 140 Cal.App.4th 1157, 1163 (*Delgado*).) Any law that applies to events occurring before its enactment and which disadvantages the offender either by altering the definition of criminal conduct or increasing the punishment for the crime is prohibited as ex post facto. (*Delgado*, at p. 1164.) Here, the probation department advised that the offenses in Counts 13-14 were subject to mandatory consecutive sentencing under section 667.6, subdivision (d), and

that the same was true of Counts 1-12 pursuant to the holding in *Jimenez*, *supra*. At the sentencing hearing, the trial court made reference to these advisements and said, "Probation got that wrong," but nevertheless imposed consecutive sentences. Rivera relies on this statement to show he was erroneously sentenced under the current version of section 269.

There are two problems with appellant's position. First, a trial court is presumed to have been aware of and followed the applicable law in matters of sentencing. (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496.) We are not satisfied that the presumption has been rebutted by Rivera's reliance upon one admittedly confusing remark by the trial judge. Second, a legally correct decision cannot be overturned on appeal merely because it was based on erroneous reasoning. (*People v. Geier* (2007) 41 Cal.4th 555, 582 ["[W]e review the ruling, not the court's reasoning and, if the ruling was correct on any ground, we affirm."].) As we will explain, the laws in effect at the time of the offenses in Counts 1 through 12 required the imposition of consecutive sentences. Hence, there are no grounds for reversal under ex post facto principles.

Statutory Construction Claim

Current and former versions of section 269 criminalize aggravated sexual assault of a child by sodomy, as sodomy is defined in section 286. (§ 269, subd. (a)(3); Stats. 2006, ch. 337, § 6.) In *Jimenez*, *supra*, the defendant was convicted of two counts of violating former section 269, subdivision (a)(3) for sodomizing a 12-year-old boy in 1996. (*Jimenez*, *supra*, 80 Cal.App.4th at pp. 288-289.) The trial court imposed two consecutive sentences of 15 years to life in prison based on its understanding of the interplay between former section 269 and section 667.6. The latter statute requires that "[a] full, separate, and consecutive term shall be imposed for each violation of an offense specified in subdivision (e) if the crimes involve separate victims or involve the same victim on separate occasions," (§ 667.6, subd. (d)) and lists section 286 (i.e., sodomy) as one of the qualifying offenses (*id*., subd. (e)).

13.

On appeal, the *Jimenez* defendant challenged the sentencing court's interpretation of section 667.6. We upheld the imposition of consecutive prison terms based on the following analysis:

> Subdivision (d) of section 667.6 … was intended by the Legislature to provide increased punishment for cases where defendant's culpability is increased by the 'number and violence of his crimes.' [Citation.] Section 269 was enacted … to aggravate punishment for forcible sexual offenses where the defendant's culpability is increased by a substantial age disparity. Defendant correctly points out that section 667.6, subdivision (d) does not explicitly provide that it applies to violations of section 269. However, he makes too much of this omission, ignoring the fact that violation of section 286 is one of the predicate offenses of section 269; one committing a forcible sodomy offense with the prescribed age disparity violates section 269. When the jury found defendant had violated section 269 under the circumstances presented here, it necessarily found he had violated section 286 …. Thus, the factual predicate necessary to apply section 667.6, subdivision (d) was proved beyond a reasonable doubt.
>
> It would be irrational to suppose the Legislature intended that criminals who commit multiple violent sexual offenses would be exempt from the aggravated punishment prescribed by section 667.6 merely because their victims happened to be children under age 14 who were 10 or more years younger than they. Defendant does not proffer any decisional or historical support for his assertion that by enacting section 269 the Legislature created a separate sentencing scheme for violent sexual offenders who prey on a particular class of victims. He fails to account for the fact that characterization of section 269 as such would work to the advantage of

14.

pedophiles by exempting them from the additional penalties that would ordinarily result when they commit multiple offenses …."
(*Jimenez*, at pp. 291-292.)

Rivera's briefs advance the argument we rejected in *Jimenez*, i.e., that the Legislature did not intend for section 667.6 to apply to violations of former section 269 because "[s]ection 667.6 does not explicitly list section 269, subdivision (a)(3) as one of the offenses subject to mandatory consecutive sentencing." He also contends that our reasoning in *Jimenez* is not applicable to his case because "the jury did not necessarily find that [he] committed violations of section 286, for which section 667.6, subdivision (d) imposes mandatory consecutive sentences." The record does not support this contention. The jury was instructed that in order to return a guilty verdict on Counts 1 through 12, it had to find Rivera committed "forcible sodomy" on M., and that it should refer to the definition of "forcible sodomy" provided in a separate instruction. The very next instruction defined forcible sodomy in the terms of section 286 and, in the written version, even contained a citation to that code section.

Finally, appellant relies on the 2006 amendment to section 269 which expressly made multiple violations of the statute subject to mandatory consecutive sentencing. He argues, "[b]ecause the amendment did not provide that it was declaratory of existing law, the implication is that, prior to September, 2006, consecutive terms were not required under section 269." However, the Fourth District Court of Appeal rejected essentially the same argument in *People v. Figueroa* (2008) 162 Cal.App.4th 95, 100 (*Figueroa*). The appellate panel adopted our analysis in *Jimenez*, and concluded that section 667.6, subdivision (d) was "crystal clear" in its application to the crimes listed in former section 269 prior to the 2006 amendment. (*Figueroa, supra,* 162 Cal.App.4th at p. 100.) We see no reason to depart from the existing precedent on this issue, and decline to do so.

15.

## **DISPOSITION**

The judgment is affirmed.

_____
GOMES, Acting P.J.

WE CONCUR:

_____
DETJEN, J.

_____
PEÑA, J.

16.